1-05-1059

FIFTH DIVISION
October 5, 2007

No. 1-05-1059

| | | |
|---|---|---|
| THE STATE *ex rel.* BEELER SCHAD AND DIAMOND, P.C., | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| RITZ CAMERA CENTERS, INC., and RITZ INTERACTIVE, INC., and WOLF CAMERA, INC., | ) ) ) | 02 L 869 |
| dELiA*s CORP., | ) ) | 02 L 1435 |
| NBTY, INC., and VITAMIN WORLD, INC., and VITAMIN WORLD ONLINE, INC., | ) ) ) | 02 L 4462 |
| ANTHROPOLOGIE, INC., ANTHROPOLOGIE DIRECT, LLC, and URBAN OUTFITTERS DIRECT, LLC, | ) ) ) ) | 02 L 4464 |
| MTS INCORPORATED, and TOWER DIRECT LLC, | ) ) | 02 L 4466 |
| PACIFIC SUNWARE OF CALIFORNIA, INC., and PACSUN.COM, | ) ) ) | 02 L 5023 |
| PETsMART, INC., PETsMART.COM, and PETsMART DIRECT, | ) ) ) | 02 L 5025 |
| BASSNET, INC., G.H. BASS & CO., IZOD CORPORATION, IZOD.COM, INC., and PHILLIPS VAN-HEUSEN CORPORATION, | ) ) ) ) | 02 L 5824 |
| RETAIL BRAND ALLIANCE, INC., d/b/a CASUAL CORNER GROUP, | ) ) | 02 L 5827 |

1-05-1059

| | | |
|---|---|---|
| PRESIDIO RETAIL, INC., d/b/a ARMANI EXCHANGE, | ) | 02 L 6312 |
| | ) | |
| HALLMARK CARDS, INC., | ) | 02 L 6702 |
| | ) | |
| THE PFALTZGRAFF COMPANY, | ) | 02 L 7528 |
| | ) | |
| HOT TOPIC, INC., | ) | 02 L 7529 |
| | ) | |
| BASS PRO, INC., BASS PRO OUTDOOR WORLD, L.L.C., BASS PRO OUTDOORS ONLINE, L.L.C., and THREE JOHNS COMPANY, a/k/a BASS PRO SHOPS, INC., NEW BALANCE ATHLETIC SHOE, INC., | ) ) ) ) | 02 L 7530 |
| | ) | |
| NEW BALANCE WEB EXPRESS, | ) | 02 L 8234 |
| | ) | |
| BOOKS-A-MILLION, INC., BOOKSAMILLION.COM, INC., | ) ) | 02 L 8235 |
| | ) | |
| 1-800-FLOWERS.COM, INC., | ) | 02 L 10462 |
| | ) | |
| MAIDENFORM, INC., | ) | 02 L 10913 |
| | ) | |
| TUPPERWARE.COM, INC., | ) | 02 L 12900 |
| | ) | |
| AMAZON.COM, INC., BORDERS GROUP, INC., BORDERS ONLINE, INC., TOYSRUS, INC., and TOYSRUS.COM, | ) ) ) | 03 L 185 |
| | ) | |
| EB CATALOG CO., INC., EB WORLD.COM, INC., and ELECTRONICS BOUTIQUE HOLDING CORP., | ) ) | 03 L 1163 |
| | ) | |
| SPENCER GIFTS ONLINE, INC., UNIVERSAL STUDIOS, INC., and UNIVERSAL STUDIOS ON-LINE, INC., | ) ) ) | 03 L 2506 |
| | ) | |
| STUART WEITAMAN, INC., and | ) | 03 L 2931 |
| | ) | |
| GATEWAY, INC., f/k/a GATEWAY 2000, | ) | 03 L 3071 |
| | ) | |
| Defendants-Appellants. | ) ) ) | Honorable Ronald F. Bartkowicz, Judge Presiding. |

1-05-1059

JUSTICE GALLAGHER delivered the opinion of the court:

In this Illinois Supreme Court Rule 308 petition (155 Ill. 2d R. 308), we are asked to answer six certified questions dealing with a claim brought under the Illinois Whistleblower Reward and Protection Act (Act) (740 ILCS 175/1 *et seq.* (West 2002)), filed by Beeler Shad & Diamond as a relator on behalf of the State of Illinois. The underlying claim relates to defendants' sale of goods over the internet and/or through catalogs into Illinois and defendants' alleged failure to collect and remit use tax relating to these sales.[1] The trial court certified the following questions for interlocutory review:

*Question 1*

"As a matter of law, if a remote retailer does not collect and remit use tax on sales to Illinois customers, can it make a 'knowingly' false record or statement, as required to create liability under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1?"

*Question 2*

"(a) As a matter of law, does the Whistleblower Act require the existence of an actual record or statement to support a claim or can the failure to keep a record be actionable?

(b) As a matter of law, can documents memorializing a purchase (i.e. invoices or packing receipts) that show in the line item for tax '$0.0' or in some other way that tax is not being collected be considered 'false' under the Whistleblower Act where the retailer that created those documents does not collect tax?

---

[1] This court granted a motion to withdraw from the appeal filed by Pfaltzgraff Co., Maidenform, Inc., Toy's R Us and PETsMART.

3

1-05-1059

(c) Under the Whistleblower Act, as a matter of law, is it necessary that a false statement be submitted to or actually relied upon by the State?"

*Question 3*

"Does the application of the general provisions of the Whistleblower Reward and Protection Act, 740 ILCS 175/1, to enforce the sales and use tax laws improperly deprive taxpayers of the specific rights and privileges afforded them under the Protest Monies Act (30 ILCS 230/1), the Taxpayer's Bill of Rights, 20 ILCS 2502/1, and/or the statutory administrative procedures offered by the Illinois Department of Revenue, 35 ILCS 105/1; 35 ILCS 120/1, such that the Whistleblower Reward and Protection Act cannot be used to enforce the collection of taxes due the State?"

*Question 4*

"Is the Illinois Department of Revenue the sole entity authorized by the Illinois General Assembly to assess and collect use tax?"

*Question 5*

"Does the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1, apply to alleged tax liabilities under the Use Tax Act?"

*Question 6*

"(a) Does the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1, violate the Attorney General clause of the Illinois Constitution, Article V, Section 15, by improperly usurping the exclusive authority of the Attorney General to initiate and conduct litigation on behalf of the State?

4

(b) Does the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1, as applied to tax matters, violate either the Attorney General clause or the Executive Compensation clause of the Illinois Constitution, Article V, Sections 15 and 21?"

This court denied defendants' Rule 308 petition; however, the Illinois Supreme Court pursuant to its supervisory authority directed this court to answer the above certified questions, which we now do in this appeal.

BACKGROUND

The following facts are relevant to answering the certified questions raised on appeal. The law firm of Beeler, Schad & Diamond filed a complaint alleging that the defendant retailers' records, returns and statements that claimed no use tax was due on their sales to Illinois consumers were knowingly false within the meaning of the Act. Beeler, Schad & Diamond filed this complaint on behalf of the State of Illinois as a relator. The complaint alleged that "defendants are retailers whose out-of-state operations made sales to Illinois residents over the Internet and/or through catalogs and defendants failed to collect and remit use tax on these sales." The complaint also alleged that each of defendants' Web sites, retailers' records, returns and statements that claimed no use tax due on its sales to Illinois customers was knowingly false within the meaning of the Act.

Beeler, Schad & Diamond also filed a similar complaint in Nevada. In the Nevada case, the Nevada Supreme Court addressed the false claims actions brought by Beeler, Schad & Diamond relating to allegations of falsified tax liabilities associated with the retailers' Internet and/or catalog sales. *International Game Technology, Inc. v. Second Judicial District Court of*

1-05-1059

*the State of Nevada,* 122 Nev. 132, ____, 127 P.3d 1088, 1095 (2006). The Attorney General in the Nevada case intervened and moved to dismiss the case. *International Game Technology, Inc.,* 122 Nev. at ____, 127 P.3d at 1096. The Nevada Supreme Court affirmed the trial court's dismissal of the case. *International Game Technology,* 122 Nev. at ___, 127 P.3d at 1108. The Nevada court held that false claims actions incorporating the state's revenue statutes were not necessarily excluded as claims appropriately brought under the Nevada false claims act, but the Attorney General had articulated a legitimate government purpose for intervening and dismissing the complaint, asserting that the entity entrusted to maintain consistency and uniformity in the tax laws should resolve the issue. *International Game Technology,* 122 Nev. at ___, 127 P.3d at 1108.

Here, the Attorney General intervened in the matter filed in the circuit court and prosecuted the matter on the State's behalf. In response to the complaint filed in Illinois, defendants filed a joint motion to dismiss. The trial court denied defendants' joint motion to dismiss and also granted defendants' motion for an interlocutory appeal under Rule 308. This court denied defendants' Rule 308 petition for leave to appeal, and defendants appealed that decision to the Illinois Supreme Court, which directed this court pursuant to its supervisory authority to answer the certified questions.

Before addressing the certified questions, we deem it necessary to provide background information underlying the questions in the instant appeal. The act implicated in the instant matter is the Illinois Whistleblower Reward and Protection Act (740 ILCS 175/1, *et seq.* (West 2002)). The Act provides a provision relating to false claims. 740 ILCS 175/3 (West 2002). According to the false claims provision, a person presents a false claim when he "knowingly

6

makes, uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State." 740 ILCS 175/3(a)(7) (West 2002). The Illinois false claims provision defines "knowing" and "knowingly" as:

"a person, with respect to information:

(1) has actual knowledge of the information;

(2) acts in deliberate ignorance of the truth or falsity of the information; or

(3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required." 740 ILCS 175/3(b) (West 2002).

Alleged violations of the Act may be brought in a civil action commenced by the Attorney General or a private person, referred to as a "relator," in the State's name in actions known as *qui tam* actions. 740 ILCS 175/4(a), (b), (c) (West 2002). The State may intervene, proceed with the action and take over conduct of the action, or decline to intervene. 740 ILCS 175/4(b)(4)(A), (B) (West 2002). If the State proceeds with an action commenced by the relator, the relator receives a percentage of the proceeds from the successful disposition or settlement of the claim. 740 ILCS 175/4(d) (West 2002).

The Act is modeled after the Federal False Claims Act (FCA) (31 U.S.C. §3729 *et seq.* (2000) and is an antifraud statute. *State ex rel. Beeler, Schad & Diamond, P.C. v. Burlington Coat Factory Warehouse Corp.*, 369 Ill. App. 3d 507, 510-11, 860 N.E.2d 423, 425-26 (2006). The FCA includes a provision referred to as the "reverse false claims" provision. The reverse false claims provision "was added 'to provide that an individual who makes a material misrepresentation to avoid paying money owed the Government would be equally liable under

7

1-05-1059

the Act as if he had submitted a false claim to receive money.' " *United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1194 (10th Cir. 2006), quoting Senate Report No. 99-345, at 18, 1986 U.S.C.C.A.N. 5283.  A reverse false claims cause of action "requires proof that the defendant 'knowingly' made, used, or caused to be made a false record or statement to avoid an obligation.  To act 'knowingly' means that a person, with respect to information: (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." *Bahrani*, 465 F.3d at 1205-06.  To succeed in a reverse false claims cause of action, "[n]o proof of specific intent to defraud is required." *Bahrani*, 465 F.3d at 1206.

The obligation allegedly avoided here is the payment of use tax.  The use tax is a tax on the privilege of using tangible property in the State.  35 ILCS 105/3 (West 2002).  The use tax must be collected and remitted by any retailer maintaining a place of business in Illinois.  35 ILCS 105/3-45 (West 2002).

Our review of an interlocutory appeal brought pursuant to Rule 308 "is strictly limited to the certified question." *In re Estate of Williams*, 366 Ill. App. 3d 746, 748, 853 N.E.2d 79, 82 (2006).  Our responsibility in addressing Rule 308 cases "is to answer the certified question rather than to rule on the propriety of the parties' claims." *In re Estate of Williams*, 366 Ill. App. 3d at 748, 853 N.E.2d at 82.  With these principles in mind, we now turn our attention to answering the certified questions at issue in the instant case.

8

ANALYSIS

*Question 1*

The first question that we will address is what constitutes a "knowingly" false record or statement sufficient to create liability under the Act. Defendants contend that the allegedly false statements at issue here reflect nothing more than a "difference in interpretation growing out of a disputed legal question." *United States ex rel. Humphrey v. Franklin-Williamson Human Services, Inc.*, 189 F.Supp. 2d 862, 867 (S.D. Ill. 2002). Defendants claim that whether they were required to collect use tax is a disputed question of law and assuming *arguendo* that the alleged violations could be proved, the State could not prove that defendants had the requisite "knowledge" required under the Act. Defendants contend that, despite the trial court's decision that a disputed legal question cannot, as a matter of law, be knowingly false, the trial court erred in its treatment of this decision by denying defendants' motion to dismiss. Defendants assert that since the laws and regulations regarding nexus in Illinois are disputed and in a "quagmire," causes of action premised on nexus with Illinois cannot create a violation of the Act, which requires a "knowing" fraud upon the State. 740 ILCS 175/3(a)(7) (West 2002).

The State responds that whether defendants acted with the requisite state of mind is a question of fact that cannot be resolved on a motion to dismiss. The State maintains that whether defendants had a sufficient nexus with Illinois subjecting them to use tax depends on the quantity, nature and scope of their contacts with Illinois. The State similarly contends that the complaints alleged that defendants had sufficient contacts with Illinois to create a tax liability and that defendants knowingly made false statements that they did not owe use tax. As such, the trial court properly denied the motion to dismiss.

Under the circumstances of the instant case, the answer to this certified question is that a remote retailer cannot make a "knowingly" false record or statement sufficient to create liability under the Act when the pertinent area of the law is unclear and specific factual analysis must be completed to determine if the retailers' use tax liability was correctly disclosed as $0. To prevail in a reverse false claims cause of action, proof is required: "(1) that the defendant made, used, or caused to be used a record or statement to conceal, avoid, or decrease an obligation to the United States; (2) that the statement or record was false; (3) that the defendant knew that the statement or record was false; and (4) that the United States suffered damages as a result." *Wilkins ex rel. United States v. State of Ohio*, 885 F.Supp. 1055, 1059 (S.D. Ohio 1995), citing *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life & Accident Insurance Co.*, 721 F.Supp. 1247, 1258-59 (S.D. Fla. 1989).

We find *Wilkins ex rel. United States v. State of Ohio*, 885 F.Supp. 1055 (S.D. Ohio 1995), instructive in defining the term "knowingly." The *Wilkins* court addressed the requisite knowledge needed to prevail in a reverse false claims act violation and stated that "[t]he gist of the violation is not an intent to deceive but the knowing presentation of a claim, record or statement that is either 'fraudulent' or 'false' and the requisite intent is the knowing presentation of what is 'known to be false.' " *Wilkins*, 885 F.Supp. at 1059, citing *Wang ex rel. United States v. FMC Corp.,* 975 F.2d 1412, 1421 (9th Cir. 1992), citing *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991); see also *Thompson Pacific Construction, Inc. v. City of Sunnyvale*, No. H029818, slip. op. at 12 (Cal. App. September 21, 2007). Interpreting *United States ex rel. Stevens v. McGinnins*, No. C-1-93-442 (S.D. Ohio 1994), the *Wilkins* court stated that *McGinnins* "does not hold that the mere failure to record or

report violations of the law which might result in an obligation to pay money is sufficient in itself to violate subsection (a)(7). Rather, . . . in order to recover under subsection (a)(7), the plaintiff must also prove that the false information, be it in the form of an affirmative statement or an omission, was knowingly submitted by the defendant to the United States Government for the purpose of avoiding a debt or obligation to the government." *Wilkins*, 885 F.Supp. at 1064. We find it necessary to draw upon the distinction between a material omission that was not recorded as required on a document amounting to a deliberate concealment and the instance here where the alleged omission arose from an interpretation and analysis of an existing area of unsettled law.

We also note that the Illinois Department of Revenue's (Department) position regarding nexus determinations consistently rests upon an analysis of the facts specific to a taxpayer. Even though the Department has created a general guideline to assist in making nexus determinations, whether an entity has sufficient nexus in the State to impose a tax liability rests upon the specific facts of the transaction. *Illinois Department of Revenue General Information Letter,* ST 07-0063-GIL (June 12, 2007). Given the Department's consistent position that nexus determinations are a fact-specific inquiry and the myriad of considerations that must be undertaken to determine nexus based on the nature and extent of activities within the State, we cannot conclude that a retailer that does not collect and remit use tax, but does discloses that no use tax was collected, can "knowingly" make a false record or statement necessary to create a liability under the Act.

We further note that dismissing a complaint that raises a question of fact has long been rejected in this state. See *A.F.P. Enterprises, Inc. v. Crescent Pork, Inc.*, 243 Ill. App. 3d 905,

1-05-1059

912, 611 N.E.2d 619, 625-26 (1993). It is uncertain at this stage of the proceedings whether defendants consulted with a tax professional or sought tax advice regarding their use tax obligations in Illinois, which would assist in determining whether defendants "knowingly" omitted collecting use tax in Illinois as defined by the FCA or if the failure to collect and remit use tax was based on flawed reasoning or a difference in interpretation of disputed legal questions. See *United States v. Bourseau*, No. 03-CV-907-BEN (WMC), slip op. at 13 (S.D. Cal. September 29, 2006). As such, the trial court did not err in denying the motion to dismiss in light of the necessary factual determinations that must be made regarding defendants' knowledge.

*Question 2(a)*

We answer this question by stating that the Act requires the existence of an actual record or statement; however, the failure to keep a record when required to do so may be actionable under the Act given the proper factual scenario. Defendants assert that finding a "false statement" requires a complaint to allege: (1) an actual "record or statement"; (2) that is "false"; and (3) that was submitted to or relied upon by the State. Defendants contend that the alleged false statements here relate to the failure to create a record, and the absence of a record cannot violate the Act. Defendants maintain that contrary to the trial court's finding, the failure to keep reports of tax owed does not constitute a false record. To support this contention, defendants cite to *American Textile Manufacturers. Institute, Inc. v. The Limited, Inc.*, 190 F.3d 729, 736 (6th Cir. 1999), *Pickens v. Kanawha River Towing*, 916 F.Supp. 702, 708 (S.D. Ohio 1996), and *In re Krikava*, 236 B.R. 701, 708 (Bankr. D. Neb. 1999). Defendants also recite the Act's

12

language, which states in pertinent part: "Any person *** who knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State ***." 740 ILCS 175/3(a)(7) (West 2002). Defendants maintain that according to the Act's plain language, "making" or "using" a record or statement requires the existence of an actual record. Absent an actual record, defendants claim that a violation of the Act cannot exist.

The State responds that the Act is an antifraud statute and, as such, the intentional concealment of a material fact is the equivalent of a false statement of material fact. The State maintains that under the Illinois tax statutes and regulations, a retailer who is required to collect use tax must maintain records showing that he collected the tax "in accordance with [86 Ill. Adm. Code §150.405] and that he states such tax separately to the purchaser from the selling price of the tangible personal property which he is selling." 86 Ill. Adm. Code §150.1305(a) (amended and eff. August 21, 1974). The State claims that the complaint adequately stated that defendants did not prepare and maintain records showing that they collected the required taxes, omitted from their verified returns the use tax liability incurred on retail sales over the Internet, and failed to remit to the State the full amount of their use tax liability. The State asserts that defendants' failure to maintain records and to make disclosures to the State when required to do so, as well as withholding information when making those disclosures, is the equivalent of creating a false record for purposes of the Act.

The State relies on *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 465 (9th Cir. 1999), which held that the failure to disclose required information in a disclosure statement was sufficient evidence of a false statement or record to preclude summary judgment. The State

also relies on *United States ex rel. Augustine v. Century Health Services, Inc.*, 289 F.3d 409, 415 (6th Cir. 2002), which held that "a false implied certification may constitute a false or fraudulent claim even if the claim was not expressly false when it was filed." The State further relies on *Pickens v. Kanawha River Towing*, 916 F.Supp. 702 (S.D. Ohio 1996), for the proposition that the failure to accurately maintain a record constituted a false record under the FCA. *Pickens*, 916 F.Supp. at 708. The State claims that defendants were required to verify, under penalty of perjury, the accuracy of their returns, records and payments, which omitted the use tax that they were required to collect, record and disclose, rendering the documents false for purposes of the Act. The State asserts that defendants' documents falsely represented that no use tax was due and not that it was passing its legal obligation to collect and remit the use tax to its customers.

We answer certified question 2(a) in the affirmative. To state a claim under the Act, the alleged violation must be based on a false statement or document. We restrict our answer to stay within the limited scope of concluding that an actual document must exist; however, we do not express an opinion as to whether concealment of or omission of material information from documents or records is sufficient to state a claim because such an inquiry is outside the scope of the certified question. Without the existence of a document or statement, we believe it would be difficult to determine whether the document was false. See *American Textile Manufacturers Institute, Inc.*, 190 F.3d at 736 (stating that "a reverse false claim action cannot proceed without proof that the defendant made a false record or statement at a time that the defendant owed to the government an obligation sufficiently certain to give rise to an action of debt at common law"); *United States ex rel. Marcy v. Rowan Cos.*, No. 03-3395, slip op. at 12-13, 15 (E.D. La. August 17, 2006) (noting that defendants neglected to record discharges in an oil log book and weekly

14

1-05-1059

drilling reports in attempt to conceal defendants' obligations to pay oil royalties, transfer oil resources and civil fines); *United States ex rel. Drake v. Norden Systems, Inc.*, No. 3:94-CV-963(EBB), slip op. at 12 (D. Conn. August 24, 2000) (referring to specific documents that were submitted to conceal payment of an obligation).

We believe the cases relied upon by the State are distinguishable because those cases do not address reverse false claims violations that are at issue here or they relate to an omission of material information from existing documents. *Oliver*, 195 F.3d at 465 (addressed the exclusion of companies on a disclosure statement); *Pickens,* 916 F.Supp. at 708 (discussed the failure to record discharges on a vessel's log); and *United States ex rel. Augustine v. Century Health Services, Inc.*, 289 F.3d 409, 415 (6th Cir. 2002) *(*addressed the continuing duty to provide information after initial documents were submitted). We must also state that our role in this appeal is not to determine whether defendants violated any relevant sections of the Illinois tax statutes and regulations by not filing appropriate returns or supporting documents, and as such, we express no opinion regarding any alleged violation of the Illinois tax laws. Adopting a literal reading of the Act's statutory language, we must conclude that an actual false record or statement must exist to bring a claim under the Act. See *Whitledge v. Klein*, 348 Ill. App. 3d 1059, 1062, 810 N.E.2d 303, 305-06 (2004). Without an actual document, the next required determination in the analysis of whether the record or statement was false would be difficult, potentially even impossible under certain circumstances.

We must now consider the trial court's reliance on *Pickens v. Kanawha River Towing*, 916 F.Supp. 702 (S.D. Ohio 1996). The *Pickens* court agreed "that a reverse false claim requires more than a mere failure to report a violation of another statute." *Pickens*, 916 F.Supp. at 708.

15

1-05-1059

The *Pickens* court also held that "[a] failure to report does not count as a statement or record." *Pickens*, 916 F.Supp. at 708. In *Pickens*, the court held that a vessel log that omitted a major event that it should ordinarily contain renders the record to be a false record for purposes of the Act if the government relies upon or otherwise reviews the logs as part of its regulatory role. *Pickens*, 916 F.Supp. at 708. We note that unlike the record in *Pickens,* in which a material event was omitted from the record, the record in the instant case provides for and includes a separate line item reflecting that the use tax collected relating to the specific purchase was $0. Thus, in the instant case, defendants disclosed the pertinent information, but whether that information was accurately disclosed is for the trial court to determine on the evidence presented. In both *Pickens* and here, however, the alleged false statements can be traced to an actual record.

*Question 2(b)*

Our answer to this certified question is that documents memorializing that no use tax is due or collected should not be considered false under the Act provided the retailer lacked *scienter* when generating the documents. Our analysis of this issue focuses on the meaning of the term "false" or "falsity." Although the FCA does not define the term "falsity," generally, falsity means an untruth. *Fru-Con Construction Corp. v. Sacramento Municipal Utility District*, No. S-05-583 LKK/GGH (E.D. Cal. June 15, 2007). Since falsity is synonymous with an untruth, "[E]xpressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false." *United States Maxwell ex rel. v.*

16

1-05-1059

*Kerr-McGee Chemical Worldwide, LLC*, No 04-CV-01224-PSF-CBS, slip op. at 2 (D. Colo. October 6, 2006).

Defendants contend that documents demonstrating that tax was not being collected cannot as a matter of law be deemed "false" because a "true" statement cannot be "false" within the Act's meaning. *United States ex rel. Garst v. Lockheed Integrated Solutions Co.*, 158 F.Supp. 2d 816, 823 (N.D. Ill. 2001); *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7'th Cir. 1999); *United States ex rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir. 1996). Defendants contend that the statements on the documents that "Tax: $0.00" represents truthful assertions that no tax was being collected, which cannot be deemed false. In response, the State contends that defendants' failed to collect use tax and falsely stated that no Illinois use tax was applicable to the retail sales.

We conclude that a document reflecting that no use tax is being collected and the document reflects that use tax due is "$0.00" cannot be considered false for purposes of the Act. We agree with defendants' position that a document that reflects the tax due relating to a transaction is $0 and that no tax was in fact being collected cannot be false for purposes of the Act but, instead, represents a truthful assertion. We must emphasize that our inquiry here is not to determine whether a knowingly false statement is required, which is the subject of the first certified question but, instead, whether a statement that is factually true can be deemed false for purposes of bringing a claim under the Act. Neither party here disputes that no use tax was collected or that the invoices rendered to the purchasers reflected that no use tax was collected or due. Since the documents at issue are factually true, in our view, factually true statements cannot be considered sufficiently false for purposes of bringing a claim under the Act. See *Fru-*

17

1-05-1059

*Con Construction Corp.*, slip op. at 17, citing *Hindo v. University of Health Sciences/The Chicago Medical School*, 65 F.3d 608, 613 (7th Cir. 1995).

*Question 2(c)*

Next, we turn our attention to whether it is necessary that a false statement be submitted to or actually relied upon by the State for purposes of the Act. We conclude the answer to this question is no.

Defendants contend that for a claim to fall within the purview of the Act, it must be presented to and relied upon by the State. Defendants claim that the documents at issue here are generated in the course of business and are given to customers who purchase goods from defendants and the documents are not submitted to or relied upon by the State. Defendants maintain that a record must be submitted to the government to establish liability under the FCA and cite to the following cases in reliance for this proposition: *Pickens*, 916 F.Supp. at 708; *Wilkins*, 885 F.Supp. at 1064; *Hopper*, 91 F.3d at 1266-67; *United States ex rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d 220, 232 (1st Cir. 2004); *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002); *United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*, No. CIV. A. 94-7316 (E.D. Pa. August 24, 2000); and *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). Defendants claim that an entity cannot "conceal, avoid or decrease an obligation *** to the Government" based on a record unless the government sees the record. Defendants contend that the trial court erred in relying on *Pickens v. Kahawah River Towing*, 916 F.Supp. at 708, which held that no reliance requirement exists, because the government would see and rely

18

on the allegedly false records at issue in *Pickens*. Defendants assert that the Act requires an allegedly false statement or record to be submitted to or actually relied upon by the State to constitute a violation of the Act.

The State responds that documents are considered submitted to the State for purposes of the Act if the State potentially may rely upon the documents. The State claims that the invoices, order confirmations, and sales receipts that defendants distribute to retail purchasers are the same records that the State relies on to determine defendants' tax burden and regulatory compliance and direct submission to the State is not necessary. 35 ILCS 105/11 (West 2004); 35 ILCS 120/7 (West 2004); 86 Ill. Adm. Code §1305(b) (amended and eff. August 21, 1974). The State maintains that it is sufficient that the State could have seen and relied upon the documents as part of its regular operations to satisfy this element.

The answer to this certified question is that a document is not required to be submitted to or directly relied upon by the government to violate the Act. We note that the State relies upon *United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189 (10th Cir. October 12, 2006), which addressed the presentment requirement of documents to the government in the context of reverse false claims actions. The issue addressed in *Bahrani* was whether export certificates presented only to foreign governments could satisfy the false representation or presentment requirement of a reverse false claims violation. *Bahrani*, 465 F.3d at 1206. The *Bahrani* court concluded that according to the plain language of the reverse false claims statute, presentment of documents to the government is not required. *Bahrani*, 465 F.3d at 1207; see also *United States ex rel. Koch v. Koch Industries*, 57 F.Supp. 2d 1122, 1144 (N.D. Okla. 1999). In reaching this conclusion, the *Bahrani* court considered the reverse false claims language in comparison to

other sections of the false claims statute which, unlike the reverse false claims provision, expressly require presentment to the government. *Bahrani*, 465 F.3d at 1207. Here, similar to the presentment claim in *Bahrani*, the documents at issue were not presented directly to the government, but were instead given directly to customers. Finding *Bahrani* persuasive, we also conclude that actual presentment to and reliance on allegedly false documents by the government is not required. See also *Koch*, 57 F.Supp. 2d at 1144 (noting that the bad act in reverse false claims "is the making or using of a false statement or record.")

*Question 3*

Next, we address whether the Act is a proper vehicle for the collection of sales and use tax. Our analysis first begins with whether claims brought under the Act afford taxpayers the same protections afforded to claims brought under the tax laws. Defendants contend that the sales and use tax laws and the Act are not equivalent and allowing the claims to proceed as whistleblower claims denies defendants due process safeguards and creates a conflict with the State's tax laws. Defendants maintain that the tax statutes provide rights and protections against "unlawful exactions" that are not provided for under the Act, thereby creating a conflict between the two statutes. Defendants claim that the trial court erroneously concluded that the tax statutes and the Act are functionally equivalent in that they both seek collection of taxes. Defendants, citing *Humphrey*, 189 F.Supp. 2d at 866-67, and *United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601 (7th Cir. 2005), contend that the Act exists to prevent fraud against the State and to shield from retribution those who uncover wrongdoing, but does not exist to collect taxes. Alternatively, defendants contend that the tax statutes exist to ensure the

20

determination, assessment and collection of "tax properly due the State" by the Department. Thus, defendants assert that a conflict between the Act and tax statutes exists, precluding the filing of tax claims under the Act. In response, the State contends that defendants are afforded protections provided to litigants in civil suits and, unlike alleged tax violations, do not bear the burden of proof associated with tax deficiencies. Thus, the State claims that due process rights are not sacrificed when tax-related claims are brought under the Act.

We agree that the Illinois tax statutes are not identical to the Act, but we cannot reach the definitive conclusion that tax claims can never be brought under the Act on the basis that the Act does not provide the same safeguards and protections provided for under the tax laws. The State correctly notes the distinguishing feature of claims brought under the Act is that these actions are civil in nature and afford defendants the protections innate in all civil cause of actions, in contrast to claims brought under the tax statutes, which afford defendants an opportunity to dispute and settle assessed tax deficiencies.

We have considered defendants' claims that despite the protections afforded to defendants under civil causes of action, these protections are not the same, specific protections afforded to defendants under the tax laws. We must keep in mind, however, the nature of the allegations at issue in the instant case. The nature of the claims here relates to defendants' alleged fraudulent failure to collect and remit use tax. Defendants contend that it is improper to bring claims under the Act when the Department has not yet assessed or determined any tax liability relating to the claim of failing to pay use tax. Defendants correctly detail the administrative process afforded to taxpayers when a dispute regarding an alleged failure to pay taxes arises. See 35 ILCS 105/12 (West 2004); 35 ILCS 120/12 (West 2004). However, the

21

1-05-1059

specific inquiry and determination that must be made under the Act is whether defendants acted knowingly in failing to pay use tax liabilities. The inquiry and dispute at issue here is not the determination and disagreement over the amount of tax assessed, but whether defendants acted with the requisite fraudulent intent and knowledge. In light of the nature of the claim and its characterization as a civil cause of action, we cannot hold that the Act can never be used to enforce the collection of taxes due to the State because it deprives defendants of due process protections. See 740 ILCS 175/4 (West 2002). It is also worthy to note that the Act does not seek to impose and collect a tax, but instead seeks to penalize actions that deprive the government of funds rightfully owed to it regardless of the nature of the underlying transaction giving rise to the claim.

*Question 4*

The answer to this question is that the Department is not the sole entity authorized to assess and collect use tax when evidence of a defendant knowingly generating a false record or statement to avoid payment of tax exists. Defendants contend that the Department has exclusive authority to assess and collect use tax based on a statutory grant of authority; and as such, claims filed to collect taxes cannot be brought under the Act. See *Village of Niles v. K mart Corp.,* 158 Ill. App. 3d 521, 523-24, 511 N.E.2d 703, 704 (1987); *People ex. rel. Fahner v. AT&T Co.*, 86 Ill. 2d 479, 487, 427 N.E.2d 1226, 1230 (1981). Defendants maintain that the trial court erred in relying on *People v. N L Industries*, 152 Ill. 2d 82, 604 N.E.2d 349 (1992), because that case did not involve the assessment or collection of a tax. Defendants claim that *Fahner v. AT&T* clearly establishes that tax cases are handled differently from other proceedings and that the power to

22

collect use taxes cannot be removed from the Department and brought under the Act. As such, defendants assert that the Department is the sole entity authorized to assess and collect use tax.

The State responds that nothing in the Administrative Procedures Act (5 ILCS 100/1-1 *et seq.* (West 2004)) or the Use Tax Act (35 ILCS 105/12 (West 2004)) provides exclusive jurisdiction in the Department to decide all use tax enforcement questions. *Employers Mutual Cos. v. Skilling*, 163 Ill. 2d 284, 287, 644 N.E.2d 1163, 1165 (1994); *Village of Itasca v. Village of Lisle*, 352 Ill. App. 3d 847, 855-56, 817 N.E.2d 160, 169 (2004). The State contends that the Department has the authority to notify the Attorney General of an entity's violation of sales tax, which lends support to the principle that the Attorney General can also enforce tax laws. See *N L Industries*, 152 Ill. 2d at 102-03, 604 N.E.2d at 355-56.

First, we note that the Illinois General Assembly has the power to generate revenue in the state and to vest exclusive jurisdiction in an administrative agency. See *Village of Lisle*, 352 Ill. App. 3d at 852, 817 N.E.2d at 166. We agree with the State that this court's decision in *Village of Itasca v. Village of Lisle,* 352 Ill. App. 3d 847, 817 N.E.2d 160 (2004), is instructive here. In *Village of Lisle*, this court, in relying upon the Illinois Supreme Court's decision in *Employers Mutual Cos. v. Skilling*, 163 Ill. 2d 284, 287, 644 N.E.2d 1163, 1165 (1994), held that explicit exclusionary language must be expressed to confer exclusive jurisdiction upon an administrative agency. *Skilling*, 163 Ill. 2d at 287, 644 N.E.2d at 1165; *Village of Lisle*, 352 Ill. App. 3d at 852, 817 N.E.2d at 166-67. Absent exclusive jurisdiction, concurrent jurisdiction exists. See *Village of Lisle*, 352 Ill. App. 3d at 853, 817 N.E.2d at 167. We rely on the *Village of Lisle* decision as precedent for establishing that the Department lacks exclusive authority to collect taxes since that authority was not expressly exclusively granted to the Department. Defendants rely on

23

1-05-1059

*Fahner v. AT&T*, 86 Ill. 2d 479, 427 N.E.2d 1226 (1981), in which the Illinois Supreme Court held that the Department alone has the authority to determine whether an entity is a taxpayer within the meaning of the Message Tax Act. We express no opinion on the applicability of *Fahner* here in light of the different taxing statutes at issue and, instead, rely on the Illinois Supreme Court's subsequent decision in *Skilling*.

Turning to the Nevada Supreme Court's decision in *International Game Technology, Inc. v. Second Judicial District Court of the State of Nevada*, 122 Nev. 132, ____, 127 P.3d 1088, 1105 (2006), which defendants rely upon, we note that the court held that the department of revenue does not have exclusive control over all proceedings related to tax issues. The Nevada Supreme Court did not conclude that claims are precluded from being brought under the state's false claims act. See *International Game Technology, Inc.,* 122 Nev. at ___, 127 P.3d at 1105. Rather, the Nevada Supreme Court noted that the state's revenue statutes do not provide the tax commission with exclusive jurisdiction over tax matters and, thus, tax matters may fall under the FCA's scope even if they arise out of allegations based on money owed under the revenue statutes. *International Game Technology, Inc.,* 122 Nev. at ___, 127 P.3d at 1104. The Nevada Supreme Court did continue to hold, however, that determinations requiring an analysis of sales and use tax statutes are "determinations better left to the tax department in order to promote consistency and uniformity." *International Game Technology, Inc.*, 122 Nev. at ___, 127 P.3d at 1108.

Similarly, this court in *Village of Lisle*, acknowledged that where an administrative "agency's technical expertise would help resolve the controversy, or when there is a need for uniform administrative standards," authority to resolve the dispute should be relinquished to the

24

administrative agency. *Village of Lisle*, 352 Ill. App. 3d at 853, 817 N.E.2d at 167. In the *Village of Lisle* case, at issue was whether the defendant was filing false reports to the Department for sales tax purposes. *Village of Lisle*, 352 Ill. App. 3d at 855, 817 N.E.2d at 168. This court in *Village of Lisle* held that since little interpretation of the tax laws was required to determine the defendant's proper site for sales-tax purposes and the trial court was only required to make a finding of fact whether the defendant was misrepresenting that site, resolution of those issues did not require the Department's technical expertise and the trial court could properly resolve the issues. *Village of Lisle*, 352 Ill. App. 3d at 855, 817 N.E.2d at 168-69. The *Village of Lisle* holding lends further support for the proposition that the Department lacks exclusive authority in addressing tax issues. See *Village of Lisle*, 352 Ill. App. 3d at 853-54, 817 N.E.2d at 167-68. Although the *Village of Lisle* case dealt with sales tax issues, we note that the sales tax is comprised of the two complementary statutes, consisting of the Retailers' Occupation Tax (35 ILCS 120/1 *et seq.* (West 2004)) and the Use Tax Act (35 ILCS 105/1 *et seq.* (West 2004)). *Brown v. Zehnder*, 295 Ill. App. 3d 1031, 1034, 693 N.E.2d 1255, 1258 (1998). Thus, we deem the rationale set forth in the *Village of Lisle* to also be applicable to use tax. Accordingly, the Department is not the sole entity authorized to handle tax-related claims relating to the assessment and collection of use tax.

We believe it is important to draw a distinction that is not fully drawn by defendants. This appeal is not seeking to assess and collect tax on defendants, which defendants contend is within the exclusive jurisdiction of the Department. If this were the situation, then the Department would conduct an audit of defendants' records and impose any deficient taxes on defendants. Rather, the underlying claim in the instant case is that defendants knowingly failed

1-05-1059

to remit use tax to the State as defined by the Act and falsified documents. The nature of these allegations exceeds a claim for a tax deficiency, which would fall within the purview of the Department's powers to assess and collect use taxes. Instead, the allegations here relate to the intent underlying defendants' alleged creation of false records and statements, which is an area that does not require the Department's specialized knowledge and is an area that the Attorney General is more than competent to address. Accordingly, based on the nature of the claims raised in the instant case, the Department is not the sole entity authorized to assess and collect use tax when allegations of false records and statements exists.

*Question 5*

Our answer to this certified question is that alleged use tax claims relating to Internet and/or catalog sales may be brought under the Act. Defendants point to the FCA's language, which the Illinois Act was patterned after, that expressly excludes all tax matters under the Internal Revenue Code from falling within the purview of the FCA. Defendants maintain that the Act's express language that states it does not apply to the Illinois Income Tax Act (35 ILCS 5/101 *et seq.* (West 2004) should be extended to also exclude the Use Tax Act. Defendants contend that the Illinois legislature contemplated that not all Illinois taxes are incorporated in the Illinois Income Tax Act when it replaced the phrase "Internal Revenue Code" with "Illinois Income Tax Act" in adopting the FCA. Thus, defendants assert that the Act does not apply to the Use Tax Act.

The State responds that the Act does not exclude claims to enforce use tax obligations. The State notes that the Act expressly states that it "does not apply to claims, records, or

26

statements made under the Illinois Income Tax Act." 740 ILCS 175/3(d) (West 2002). The State notes that in drafting the Act, the General Assembly included income tax claims, but did not include use tax claims, which indicates the General Assembly's intent to exclude use tax claims as falling under the Act's scope. See *Mattis v. State Universities Retirement System*, 212 Ill. 2d 58, 78, 816 N.E.2d 303, 314 (2004).

We reject defendants' contention that the legislature did not contemplate extending the Act's exclusionary language to include the Use Tax Act. The legislature is entrusted with the power to enact the laws of the State of Illinois, including tax laws, and to raise revenue for this State. We must reject defendants' contention that the legislature was unaware that a separate taxing scheme apart from the income taxes of the State exists when it adopted the FCA and overlooked expressly excluding those taxes from the Act. The fundamental rule of statutory construction is to determine and give effect to the intent of the legislature, and the statutory language is the best indicator of the legislature's intent. *Quality Saw & Seal, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 776, 781, 871 N.E.2d 260, 265 (2007). In interpreting a statute, we cannot find an additional statutory exclusion where one was not provided for by the legislature. *City of Chicago v. Air Auto Leasing Co.*, 297 Ill. App. 3d 873, 878-79, 697 N.E.2d 788, 791 (1998). The Illinois FCA, which is a provision within the Act, expressly states that "this section does not apply to claims, records, or statements made under the Illinois Income Tax Act." 740 ILCS 175/4 (West 2002). Accordingly, under the plain language of the Act, we conclude that use tax claims may be brought under the Act.

1-05-1059

## *Question 6(a)*

Our answer to this certified question is that the Act is constitutional and does not improperly usurp the exclusive authority of the Attorney General to initiate and conduct litigation on behalf of the State. Defendants claim that the Act's provisions directly conflict with the Attorney General's "*exclusive* constitutional power and prerogative to conduct the state's legal affairs." (Emphasis in original.) *Lyons v. Ryan*, 201 Ill. 2d 529, 540, 780 N.E.2d 1098, 1105 (2002). Defendants claim that as a result of the relator's involvement in the proceedings, it would be nearly impossible to identify and segregate the Attorney General's independent role in the litigation. Thus, the Act usurps the Attorney General's powers.

In response, the State contends that the Illinois Supreme Court previously rejected this same contention in *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 831 N.E.2d 544 (2005). The State claims that in *Schachitti*, the Illinois Supreme Court held that the Act was not unconstitutional because the Attorney General retains the authority to control the litigation at every stage of the proceedings. *Scachitti*, 215 Ill. 2d at 511, 831 N.E.2d at 560. Thus, following *Schachitti*, the State maintains that the Act is constitutional.

We agree with the State that the Act is constitutional. We rely on our state supreme court's decision in *Scachitti*. In *Scachitti*, the Illinois Supreme Court addressed whether the Act usurped the Attorney General's constitutional powers to represent the State. *Scachitti*, 215 Ill. 2d at 509, 831 N.E.2d at 559. The supreme court answered the question in the negative. *Scachitti*, 215 Ill. 2d at 510, 831 N.E.2d at 559. The supreme court reasoned that the Attorney General retains the authority to control the litigation whereas the *qui tam* plaintiffs may conduct the litigation on the State's behalf. *Scachitti*, 215 Ill. 2d at 510, 831 N.E.2d at 560. Retaining this

28

control, the supreme court concluded, precludes a finding that the Act usurps the Attorney General's constitutional power. *Scachitti*, 215 Ill. 2d at 513, 831 N.E.2d at 561. The supreme court further held that "the *qui tam* provision of the Act is a 'constitutional statute,' as it does not usurp the Attorney General's constitutional power to conduct the legal affairs of the state when the state is a real party in interest." *Scachitti*, 215 Ill. 2d at 515, 831 N.E.2d at 562. In light of the Illinois Supreme Court's definitive conclusion that the Act does not usurp the Attorney General's constitutional powers, we are not in a position to conclude otherwise. We further rely on this court's decision in *State ex rel. Beeler, Schad & Diamond v. Burlington Coat Factory Warehouse*, 369 Ill. App. 3d 507, 860 N.E.2d 423 (2006), which is a case factually similar to the instant case. This court in *Beeler, Schad & Diamond,* relying on *Schahitti*, concluded that the Attorney General retains almost complete control over *qui tam* proceedings. *Beeler, Schad & Diamond,* 369 Ill. App. 3d at 515, 860 N.E.2d at 429. Accordingly, we too hold that the Act does not usurp the Attorney General's powers and is constitutional.

## *Question 6(b)*

Finally, we turn to the last certified question and answer this question that the Act does not violate the Attorney General clause and the executive compensation clause of the Illinois Constitution, article V, sections 15 and 21. Section 15 of the Illinois Constitution provides that "[t]he Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law." Ill. Const. 1970, art. V, §15. The executive compensation clause of the Illinois Constitution states, in pertinent part: "Officers of the Executive Branch shall be paid salaries established by law and shall receive no other

29

compensation for their services." Ill. Const. 1970, art. V, §21. Defendants contend that the Act cannot be used as a tax assessment and collection mechanism because the Attorney General clause and the executive compensation clause preclude payment to private attorneys for the collection of tax monies on behalf of the State. *Saltiel v. Olsen*, 85 Ill. 2d 484, 493-94, 426 N.E.2d 1204, 1209 (1981). Defendants claim that the relator is acting as a private attorney in the collection of tax money owed to the State pursuant to the Act and, thus, cannot receive compensation for those services under the Illinois Constitution.

Defendants rely on *Saltiel*, where the Illinois Attorney General protested the payment of fees to plaintiffs in a matter involving a challenge to the constitutionality of a real estate transfer tax. The Illinois Supreme Court in *Saltiel* concluded that the executive compensation clause was not violated because the Attorney General did not hire the attorneys that represented the plaintiffs in the litigation. *Saltiel*, 85 Ill. 2d at 493-94, 426 N.E.2d at 1209. The attorneys in *Saltiel* were paid from a common fund, which contained State tax revenues, that was created from successfully invalidating a tax. *Saltiel*, 85 Ill. 2d at 491, 493-94, 426 N.E.2d at 1207. Defendants contend that even though the attorneys are not salaried employees in the instant case, public tax monies are being spent to support private attorneys' litigation associated with the collection of monies owed to the State and the State would be obligated to pay the relator a percentage of the tax money recovered under the proceedings. Thus, defendants maintain that tax claims brought under the Act violate the Attorney General and executive compensation clauses of the Illinois Constitution because private attorneys are receiving compensation from the State for duties belonging to the Attorney General.

In response, the State claims that the Act is an antifraud statute and not a tax collection statute, and fees relators receive are from the litigation's proceeds as a reward for detecting fraud upon the State. The State also claims that the executive compensation clause is not violated because fees paid from a common fund are not fees paid by the State. Thus, no violation of the executive compensation clause exists.

In our view, the Act does not violate the Attorney General clause and the executive compensation clause of the Illinois Constitution. Resources spent in litigating a matter brought in conjunction with *qui tam* proceedings cannot be equated with the State expending money to a private attorney. The State correctly notes that the Act is an antifraud act and not a tax collection act, and, thus, the money a relator receives upon a successful litigation of a claim brought under the Act should not be equated with compensation paid to attorneys for services rendered. We note that the proceedings in the instant case and in *Saltiel* addressed tax matters. Albeit in *Saltiel*, the issue addressed related to the constitutionality of a tax and here the issue relates to the alleged nonpayment of use tax. This factual distinction does not render the instant matter in violation of the Illinois Constitution. Moreover, the fees paid by the State to the relator are a percentage of the fees collected relating to the falsely filed records and do not relate directly to the collection of taxes. Thus, we do not believe that the Act violates either the Attorney General Clause or the executive compensation clause of the Illinois Constitution.

## CONCLUSION

In light of the above, the certified questions are answered as follows:

*Question 1*

No, a remote retailer cannot make a "knowingly" false record or statement to create liability under the Act if the retailer discloses that no use tax is due or collected based on the taxpayer's reasonable interpretation of the law.

*Question 2*

(a)  Yes, the Act under the facts of the instant case requires the existence of an actual record or statement.

(b)  No, documents memorializing a purchase that discloses that no use tax is being collected cannot be considered false sufficient to create liability under the Act.

(c)  No, under the Act, a false record or statement does not have to be submitted to or directly relied upon by the State.

*Question 3*

No, claims brought under the Act do not deprive defendants of rights and privileges such that the Act cannot be used to enforce the collection of taxes due the State based on false records and statements because litigants are afforded the protections provided to all litigants in civil proceedings.

*Question 4*

No, the Illinois Department of Revenue is not the sole entity authorized by the Illinois General Assembly to assess and collect use tax when defendants create fraudulent records and statements relating to taxes due to the State.

*Question 5*

Yes, the Act applies to alleged tax liabilities under the Use Tax Act when fraudulent records and statements exists.

*Question 6*

(a)  No, the Act does not violate the Attorney General clause of the Illinois Constitution by improperly usurping the Attorney General's exclusive authority to initiate and conduct litigation on the State's behalf because in *qui tam* proceedings, the Attorney General still maintains control over the proceedings.

(b)  No, the Act does not violate the Attorney General clause or the executive compensation clause of the Illinois Constitution because the relator that files a claim on behalf of the State is not directly paid by the State for services rendered.

Certified questions answered; cause remanded.

FITZGERALD SMITH, P.J., and O'MARA FROSSARD, J., concur.