# Illinois Official Reports

## Appellate Court

---

### *People ex rel. Beeler, Schad & Diamond, P.C. v. Relax the Back Corp.*,
### 2016 IL App (1st) 151580

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE *ex rel.* BEELER, SCHAD AND DIAMOND, P.C., Plaintiff-Appellee and Cross-Appellant, v. RELAX THE BACK CORPORATION, Defendant-Appellant and Cross-Appellee. |
| District & No. | First District, First Division<br>Docket Nos. 1-15-1580, 1-15-2560 cons. |
| Filed | October 17, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 03-L-11525; the Hon. Ronald F. Bartkowicz, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | Tabet, DiVito & Rothstein LLC, of Chicago (Caesar A. Tabet and Daniel I. Konieczny, of counsel), for appellant.<br><br>Stephen B. Diamond, P.C., of Chicago (Stephen B. Diamond, Matthew S. Burns, and Robert Quaid, of counsel), for appellee. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Connors and Justice Mikva concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Beeler, Schad & Diamond, P.C. (relator), filed a claim against defendant, Relax the Back Corporation (RTB), for damages and civil penalties pursuant to the Illinois False Claims Act (740 ILCS 175/1 *et seq.* (West 2014)), for failure to collect and remit use tax on RTB's Internet and catalog sales to Illinois customers. After a bench trial, the trial court found in favor of relator regarding catalog sales, but in favor of RTB on Internet sales. RTB appealed and relator filed a cross-appeal. On appeal, RTB contends that the trial court erred in (1) finding liability under the False Claims Act for failing to collect Illinois use tax where it found that RTB made a good-faith effort to conduct an investigation into its tax obligations and at all times RTB truthfully stated that it collected no Illinois use tax and (2) awarding approximately $110,000 in attorney fees based on a purported tax liability of $5181. On cross-appeal, relator contends that the trial court erred in finding that RTB had a substantial nexus to Illinois only for catalog sales, when its finding should have also applied to Internet sales. For the following reasons, we affirm the trial court's determination of no liability regarding RTB's Internet sales and reverse its finding of liability on RTB's catalog sales. We also reverse the judgment awarding relator attorney fees and costs.

¶ 2                                                JURISDICTION

¶ 3    The trial court entered its judgment after a bench trial on December 18, 2014. The parties filed motions for reconsideration and for briefing on damages and penalties. The trial court denied the motions for reconsideration on May 6, 2015, but awarded damages in favor of relator. On May 29, 2015, RTB filed its notice of appeal. Relator filed a petition for fees and costs on May 21, 2015, and on August 13, 2015, the trial court entered a judgment awarding relator fees and costs. RTB filed a notice of appeal from that order on September 10, 2015. By order of this court, RTB's two appeals were consolidated. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4    RTB contends that this court lacks jurisdiction to consider relator's cross-appeal from the trial court's judgment because it was not filed until September 10, 2015, more than 30 days after the trial court denied the motions for reconsideration on May 6, 2015. Illinois Supreme Court Rule 303(a)(3) (eff. Jan. 1, 2015) provides that "[i]f a timely notice of appeal is filed *** any other party, *** within 30 days from the entry of the judgment or order being appealed, or within 30 days of the entry of the order disposing of the last pending postjudgment motion, whichever is later, may join in the appeal, appeal separately, or cross-appeal by filing a notice of appeal, indicating which type of appeal is being taken." Although the trial court entered its judgment on May 6, 2015, relator filed its petition for attorney fees and costs on May 21, 2015. The trial court has jurisdiction to consider a petition for fees filed within 30 days of the entry of a final judgment. *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 343-44 (2001). "The filing of a postjudgment petition for fees renders a *** notice of appeal premature." *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, 388 Ill. App. 3d 81, 97 (2009). Since relator filed its petition for fees within 30 days of the trial court's May 6, 2015, judgment, RTB's notice of appeal filed on May 29, 2015, was premature and only became effective when the trial court entered its order awarding fees and costs on August 13, 2015. See Ill. S. Ct. R. 303(a)(2) (eff. Jan. 1, 2015) ("[w]hen a timely postjudgment motion has been filed

by any party, \*\*\* a notice of appeal filed before the entry of the order disposing of the last pending postjudgment motion, or before the final disposition of any separate claim, becomes effective when the order disposing of said motion or claim is entered"). Relator filed its cross-appeal on September 10, 2015. Since relator's cross-appeal was filed within 30 days of the trial court's August 13, 2015, judgment, we have jurisdiction to consider the cross-appeal.

¶ 5                                BACKGROUND

¶ 6     RTB is a business that sells back and neck care products, including ergonomic chairs, recliners, massagers, and backpacks, as well as books and videos. RTB's headquarters and only office is located in La Palma, California. RTB has no building, warehouse, or inventory in Illinois. Prior to 2013, no employee lived in Illinois. RTB's only connection to Illinois are the five retail stores owned and operated by franchisees. The franchise agreement expressly disclaims an agency relationship between RTB and franchisees and requires franchisees to display their identification as an independent owner prominently in their stores. RTB periodically sends a trainer or inspector to visit the stores with a minimum of one visit per year. In early 2005, RTB amended the franchise agreement to require franchise owners to mail a minimum of 1000 catalogs each year to customers. RTB also maintains a website and has a catalog from which customers may purchase merchandise. This merchandise is sent directly from the manufacturer or from a warehouse in California and delivered by common carrier. RTB did not collect use tax on Internet and catalog sales in Illinois until 2013.[1]

¶ 7     Relator filed the original complaint under seal on September 26, 2003. Relator's complaint alleged that RTB had a duty to collect and remit use tax in Illinois and knowingly avoided its duty to collect the tax, in violation of the False Claims Act (then referred to as the Illinois Whistleblower Reward and Protection Act (740 ILCS 175/1 (West 2002))). On August 27, 2004, the State of Illinois issued a subpoena requiring RTB to answer interrogatories and to produce documents regarding RTB's physical presence in Illinois. RTB provided the requested materials and argued that it did not have sufficient physical presence in Illinois to collect the use tax. The Attorney General determined that RTB "has substantially complied with the State's investigatory subpoena, so the subpoena matter is closed." RTB has never been audited by the Illinois Department of Revenue (IDOR).

¶ 8     In December 2005, relator served RTB with its complaint alleging violations of the False Claims Act. The Illinois Attorney General declined to intervene. At the bench trial, relator called as its only witness Robert McMillan, RTB's chief financial officer. In 2004 he consulted with outside legal counsel, Jeff Ward, regarding the subpoena and whether RTB had an obligation to collect Illinois use tax on Internet and catalog sales. Ward was a tax attorney who had been RTB's outside counsel since 1996. As legal counsel, Ward had access to all information related to RTB's operations and to all business records regarding RTB's Internet and catalog sales. Ward concluded that RTB did not have sufficient physical presence in Illinois to require RTB to collect Illinois use tax on Internet and catalog purchases.

¶ 9     McMillan consulted with Krista Isaacs, a sales tax specialist in accounting. Isaacs reviewed the franchise agreement for Illinois and had access to accounting documents

---

[1]In 2013 one of defendant's 25 employees relocated to Illinois for family purposes, and as a result, defendant has voluntarily collected Illinois use tax on its website and catalog sales from 2013 to the present.

associated with the annual audit of RTB's financial statements. Isaacs concluded that RTB did not have sufficient physical presence in Illinois to require the collection of Illinois use tax. McMillan also discussed with Isaacs an audit that was being conducted by the State of New York to investigate RTB's sales tax obligations on catalog and Internet sales. New York closed its audit without a finding of liability, which further led McMillan to believe that RTB did not have an obligation to collect use tax in Illinois.

¶ 10 McMillan testified that outside certified public accountants audited all of RTB's financial statements every year. It was his understanding that if the auditors determined RTB should be collecting Illinois use tax, and it was not collecting the tax, the auditors would have had to qualify their opinion regarding RTB's financial statements. McMillan stated that at no time did the auditors qualify their opinions. McMillan testified that he conducted a review of all corporate records from 1997 to 2010 for advice he received from professionals regarding RTB's Illinois tax obligations. McMillan understood that under the law, a substantial nexus requiring RTB to collect Illinois use tax is shown if RTB has employees in Illinois, or a warehouse in Illinois, or real or personal property located in Illinois. Although a substantial physical presence need not be shown pursuant to *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410 (1996), McMillan understood the case as holding that "frequent, almost daily contact within the State" is required to find a substantial nexus. He relied on the advice of Ward and Isaacs, as well as his own knowledge and experience as an accountant and chief financial officer, in concluding that RTB did not have sufficient physical presence in Illinois to require collection of the use tax.

¶ 11 At the close of relator's case, RTB moved for a directed verdict arguing that relator did not meet its burden to prove that RTB acted with the requisite knowledge in failing to collect Illinois use tax, nor did RTB make a false statement or record. The trial court denied RTB's motion. RTB then called an opinion witness to testify. Michael Scaduto, the former bureau manager of the audit bureau at the IDOR, testified that RTB's investigation of its Illinois tax obligations was reasonable.

¶ 12 In closing, relator argued that RTB's franchises in Illinois provided sufficient nexus to collect Illinois use tax on Internet and catalog sales and that RTB acted with reckless disregard when it should have known it had a duty to collect the tax but failed to do so. RTB argued that relator did not meet its burden to show that RTB acted recklessly or with deliberate ignorance in failing to collect Illinois use tax on Internet and catalog sales based on McMillan's testimony that he conducted a professional and thorough investigation into RTB's Illinois tax obligations. RTB argued that *State ex rel. Beeler Schad & Diamond, P.C. v. Ritz Camera Centers, Inc.*, 377 Ill. App. 3d 990 (2007), supports its position that if a defendant acts in good faith to determine its tax liability, there can be no recovery under the False Claims Act. The trial court disagreed, however, finding that "under the *Ritz Camera* case, even if there has been a good-faith effort, if that effort is flawed and the court finds that their interpretation of the activities is wrong and that there is some tax liability, the fact that they made a good-faith effort is defeated by, say, the court's examination of what the activities were \*\*\*. So the way I read *Ritz*, you could have a good faith effort, but that would be defeated by the facts."

¶ 13 The trial court determined that the mere fact a franchise relationship exists does not provide a sufficient nexus to hold RTB liable for failing to collect Illinois use tax under *Quill Corp. v. North Dakota*, 504 U.S. 298 (1992). With regard to Internet sales, the trial court found that "[t]he record indicates a firewall or a firm wall between [RTB's] internet sales and the

- 4 -

franchisees' operations." The court also "accept[ed] Mr. McMillan's testimony that he made an honest effort to determine whether or not any tax liability occurred as a result of its Internet operations." Therefore, the court found RTB not liable for failing to collect Illinois use tax on Internet sales.

¶ 14     However, regarding RTB's catalog sales, the trial court found that RTB's requirement that franchisees distribute 1000 catalogs to customers per year provided the substantial nexus under *Quill*. It found against RTB on the issue of tax liability on catalog sales and noted that the statute provides for a penalty of $5000 for each offending sale and three times the amount of tax that should have been collected. It also noted that the statute provides reimbursement for reasonable expenses incurred and attorney fees.

¶ 15     Both parties filed posttrial motions. At the hearing on the motions, the trial court clarified its good-faith finding. Referring to the testimony on McMillan's investigation and consultation with Ward and Isaacs, the trial court reaffirmed its ruling that there "was sufficient evidence for a good-faith inquiry which would meet the—or negate the knowledge that was necessary" to bring the False Claims Act "into effect." It emphasized that this finding of good faith negated RTB's liability as to Internet sales. As to the catalog sales, however, the trial court pointed to RTB's requirement that franchisees send catalogs to their customers which, in the court's view, "invited" customers to place orders by fax or phone creating a "sufficient nexus" for tax liability. The trial court noted RTB's argument that a finding of good faith forecloses a finding of liability. It found, however, that RTB's investigation concluded in 2004 or 2005 and the catalog requirement was initiated in 2005 or 2006. The trial court could not find anything in the record that RTB reexamined or reevaluated its tax liability in light of the new catalog requirement, and therefore it determined that "there's an absence of any good-faith investigation by [RTB] to determine whether or not this change in the manner in which the catalogs were going to be distributed had any impact upon their tax liability."

¶ 16     The trial court reaffirmed its judgment finding liability against RTB on catalog sales and no liability on Internet sales and assessed damages in the amount of $5181, which when tripled pursuant to the False Claims Act totaled $15,543. The trial court also assessed a penalty under the False Claims Act of $5500, bringing the total amount of damages and penalties to $21,043. Relator filed a petition for attorney fees and costs, which the trial court granted and assessed against RTB $109,061.22 in fees and costs. RTB appealed the trial court's judgment assessing damages and its order awarding attorney fees and costs, and this court consolidated the appeals. Relator cross-appealed the trial court's determination of no liability as to Internet sales.

¶ 17                                    ANALYSIS

¶ 18     Relator filed its claim against RTB pursuant to the False Claims Act. Section 3(a)(1)(G) of the False Claims Act provides that one is liable for false claims when one "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the State." 740 ILCS 175/3(a)(1)(G) (West 2014). On appeal, RTB contends that the trial court erred in imposing liability under the False Claims Act where McMillan conducted a good-faith investigation into RTB's tax obligations in Illinois and the trial court specifically found that McMillan acted in good faith, without the required knowledge. Our review of the trial court's

- 5 -

interpretation of a statute is *de novo*. *In re Marriage of Gulla*, 382 Ill. App. 3d 498, 503 (2008). However, we will not disturb the trial court's findings of fact unless they are against the manifest weight of the evidence. *Id.*

¶ 19 Relator's complaint alleged a reverse false claim, where a material misrepresentation is made to avoid paying money owed to the government. *Ritz Camera*, 377 Ill. App. 3d at 996. In *Ritz Camera*, the appellate court addressed the certified question of what constitutes "knowing" conduct sufficient to find liability for a reverse false claim under the False Claims Act. It noted that the act was modeled after the Federal False Claims Act and looked to federal law for guidance. Quoting *Wilkins ex rel. United States v. Ohio*, 885 F. Supp. 1055, 1059-60 (S.D. Ohio 1995), the court determined that "[t]he gist of the violation is *** the knowing presentation of a claim, record or statement that is either 'fraudulent' or 'false' and the requisite intent is the knowing presentation of what is 'known to be false.' " (Internal quotation marks omitted.) *Ritz Camera*, 377 Ill. App. 3d at 998. The mere failure to record or report a possible obligation to pay is not sufficient in itself to find a violation; rather, " 'in order to recover *** the plaintiff must also prove that the false information, be it in the form of an affirmative statement or an omission, was knowingly submitted by the defendant to the [government] for the purpose of avoiding a debt or obligation to the government.' " *Id.* (quoting *Wilkins*, 885 F. Supp. at 1064).

¶ 20 Answering the certified question, the court determined that "a remote retailer cannot make a 'knowingly' false record or statement sufficient to create liability under the Act when the pertinent area of the law is unclear and specific factual analysis must be completed to determine if the retailers' use tax liability was correctly disclosed as $0." *Id.* at 997. Accordingly, the *Ritz Camera* court determined that in order to find a violation of the statute, it is necessary to distinguish between conduct arising from "a deliberate concealment" and conduct merely resulting from flawed reasoning or a difference in interpretation of unsettled law. *Id.* It noted that where the false claim involved a failure to collect a use tax, "whether defendants consulted with a tax professional or sought tax advice regarding their use tax obligations in Illinois" would assist in determining whether a violation occurred. *Id.* at 999.

¶ 21 At the bench trial, RTB's chief financial officer McMillan testified that in 2004 he first consulted with legal counsel Ward, and with Isaacs, an accounting sales tax specialist, about RTB's obligation to collect Illinois use tax on Internet and catalog sales. Ward, a tax attorney, had access to all information related to RTB's business operations and to all business records regarding its Internet and catalog sales. Isaacs reviewed the franchise agreement and also had access to accounting documents associated with the annual audit of RTB's financial statements. Both Ward and Isaacs concluded that RTB did not have a sufficient physical presence in Illinois to require the collection of a use tax on Internet and catalog sales. McMillan also testified that pursuant to the annual audits performed by outside certified public accountants, the auditors never qualified their opinions to state that RTB should have been collecting Illinois use tax when it did not collect the tax. McMillan reviewed all records from 1997 to 2010 for professional advice on RTB's Illinois tax obligations and relied on that information, as well as his own knowledge and experience as an accountant and chief financial officer, to conclude that RTB did not have sufficient physical presence in Illinois to collect the use tax.

¶ 22 Furthermore, the law on what constitutes sufficient physical nexus to justify collection of the use tax is far from clear. In *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410 (1996), our

supreme court addressed whether the defendant had a sufficient physical presence in Illinois to establish a substantial nexus. Our supreme court looked at the United States Supreme Court case of *Quill*, which held that for a state's collection of use tax to comply with the commerce clause, an out-of-state vendor must be physically present in the state in order to establish a substantial nexus with the state. *Id.* at 421. Our supreme court also noted that although the *Quill* Court determined that the "slightest" physical presence in a state is not sufficient to establish a substantial nexus, it "[l]eft unclear *** the extent of physical presence in a state needed to establish more than a 'slight' physical presence." *Id.* at 423.

¶ 23    To answer that question, the court reviewed *Orvis Co. v. Tax Appeals Tribunal*, 654 N.E.2d 954 (N.Y. 1995), a New York Court of Appeals case. Our supreme court adopted the standard established in *Orvis* that the physical presence of an out-of-state vendor need not be substantial, but "must be demonstrably more than a 'slightest presence.' " *Brown's Furniture*, 171 Ill. 2d at 424. Turning its attention to the case before it, our supreme court noted that the defendant made deliveries to Illinois customers "on an almost continuous basis, directly competing with in-state retailers in establishing and maintaining a market for its furniture sales in Illinois." *Id.* at 425. During one audit period, the defendant averaged between 15 and 18 trips to Illinois per month. *Id.* Although it acknowledged that reasonable minds can differ over the evidence required to establish a sufficient physical presence to justify collection of a use tax, our supreme court held that such a "presence is shown here." *Id.*

¶ 24    The evidence here shows that McMillan consulted with legal and tax professionals, and RTB's financial statements were audited yearly with no indication by the auditors that RTB should have been collecting a use tax in Illinois. Also, McMillan interpreted *Brown* to require "frequent, almost daily contact" from RTB in order to establish sufficient physical presence in Illinois. In contrast, RTB had only the catalog requirement and periodic visits from inspectors or trainers, with a minimum of one visit per year. Our supreme court in *Brown* recognized that *Quill* did not make clear what constitutes a substantial nexus and that in looking at the evidence in these types of cases, reasonable minds can differ on whether sufficient physical presence has been established. Thus, the law in this area is open to interpretation depending on the facts of each case. We agree with the trial court's determination that McMillan "made an honest effort to determine whether or not any tax liability occurred."

¶ 25    The trial court's finding of good faith, however, applied only to negate RTB's liability based on Internet sales because it found that "a firm wall between [RTB's] internet sales and the franchisees' operations" existed. As to catalog sales, the trial court found RTB liable because it did not investigate whether its tax liability changed after RTB required franchises to send catalogs to customers each year. The trial court reasoned that if McMillan had conducted a proper investigation, he would have discovered that a sufficient nexus now existed to require collection of the Illinois use tax. The court concluded that although McMillan's investigation had been done in good faith prior to RTB's catalog requirement, his failure to investigate how RTB's tax obligations may have changed after implementation of the requirement was evidence of reckless disregard. RTB disputes that a substantial nexus existed with its catalog requirement and that its conduct, by not collecting an Illinois use tax on catalog sales, reflects reckless disregard for RTB's tax obligations.

¶ 26    Section 3(b)(1)(A) of the False Claims Act defines "knowing" and "knowingly" with respect to information as "(i) [having] actual knowledge of the information; (ii) [acting] in deliberate ignorance of the truth or falsity of the information; or (iii) [acting] in reckless

disregard of the truth or falsity of the information." 740 ILCS 175/3(b)(1)(A)(i)-(iii) (West 2014). Therefore, in reviewing the trial court's determination regarding RTB's catalog sales, we must look at the meaning of "reckless disregard" in the statute and whether RTB's conduct was evidence of reckless disregard.

¶ 27    Although *Ritz Camera* addressed the general meaning of "knowingly" in the statute, it did not discuss the "reckless disregard" element. In the recent case of *State ex rel. Schad, Diamond & Shedden, P.C. v. National Business Furniture, LLC*, 2016 IL App (1st) 150526, however, this court addressed the meaning of "reckless disregard" within the context of a reverse false claim. Since few Illinois courts had addressed this precise issue, we looked at federal court cases discussing "reckless disregard" given that the Illinois statute was modeled after the federal False Claims Act (31 U.S.C. § 3729 *et seq.* (2000)). A review of federal cases showed that the state of mind evidencing reckless disregard does not result from "[i]nnocent mistakes or negligence" (internal quotation marks omitted) (*United States v. King-Vassel*, 728 F.3d 707, 712 (7th Cir. 2013)), but rather can be described as "the ostrich type situation where an individual has buried his head in the sand and failed to make simple inquiries which would alert him that false claims are being submitted." (Internal quotation marks omitted.) *National Business Furniture*, 2016 IL App (1st) 150526, ¶ 33 (quoting *United States ex rel. Ervin & Associates, Inc. v. Hamilton Securities Group, Inc.*, 370 F. Supp. 2d 18, 41 (D.D.C. 2005)). Thus, one acting in reckless disregard ignores "obvious warning signs" and "refus[es] to learn of information which [it], in the exercise of prudent judgment, should have discovered." *Ervin*, 370 F. Supp. 2d at 42. A specific intent to defraud, however, is not necessary. *King-Vassel*, 728 F.3d at 712.

¶ 28    In *National Business Furniture*, we noted the trial court's findings that the defendant's executives, who testified they believed the shipping and handling charges were not part of the taxable selling price, were credible and that the relevant area of law was not clear. 2016 IL App (1st) 150526, ¶ 34. The defendant's chief financial officer testified that he was not certain if the company's policy not to tax shipping charges was made before he came to the company, and when the company was acquired by a German company that required re-registration with the state, he did not revisit the tax issue. *Id.* ¶ 14. He "assumed" its policy was based on an interpretation of the law, but he did not review any case law or general information letters issued by the IDOR. *Id.* He further testified that the defendant's accountants filed tax returns on its behalf and they never indicated that a use tax on the shipping charges in Illinois was warranted. *Id.* We also noted that the IDOR had conducted an audit and did not find a duty to collect Illinois use tax on shipping charges. *Id.* In conducting the audit, the IDOR had access to invoices and transaction records detailing the sale of goods, the tax collected on the goods, the separate charges for shipping and handling, and the defendant's books and records. This court affirmed the trial court's finding that the defendant did not act with reckless disregard in failing to collect Illinois use tax on shipping charges. *Id.* ¶ 37.

¶ 29    As previously discussed, the trial court here found that McMillan conducted an honest investigation into RTB's Illinois use tax liability, and we agree with its determination. We do not find, however, that RTB's failure to reexamine its tax liability in light of its catalog requirement was an act of reckless disregard. As discussed above, this area of law is far from clear and straightforward. Like the defendant in *National Business Furniture*, RTB relied on the advice of tax and legal professionals in not collecting Illinois use tax on catalog sales. McMillan believed that the positive outcome in the New York audit supported his position that

RTB had no duty to collect Illinois use tax. In 2004, the State of Illinois issued a subpoena requiring RTB to answer interrogatories and to produce documents regarding RTB's physical presence in Illinois. RTB provided the requested materials and the Attorney General determined that RTB "has substantially complied with the State's investigatory subpoena, so the subpoena matter is closed." Although McMillan's formal investigation may have concluded prior to implementation of RTB's catalog requirement, certified public accountants audited RTB's financial statements annually. After RTB established the catalog requirement, it never hid this fact from its auditors nor did it hide the fact that it was not collecting use tax in Illinois. McMillan testified that auditors always had access to all of RTB's financial documents and relevant records, and no one ever indicated that RTB should be collecting a use tax on its catalog sales in Illinois.

¶ 30    The mere failure to report an obligation is not sufficient in itself to find a violation of the False Claims Act. *Ritz Camera*, 377 Ill. App. 3d at 998. Rather, it is an affirmative omission, or an act in reckless disregard of the truth or falsity of the information, that is actionable. 740 ILCS 175/3(b)(1)(A)(i)-(iii) (West 2014). Although McMillan did not actively seek the opinion of the IDOR or reevaluate RTB's use tax obligation in light of its catalog requirement, this failure to ensure that RTB had no duty to collect Illinois use tax is not evidence of reckless disregard. Even if McMillan was mistaken in his interpretation of the law, "reckless disregard" does not apply to acts resulting from innocent mistakes or negligence. See *National Business Furniture*, 2016 IL App (1st) 150526, ¶ 33. McMillan did not act as a person who buries his head in the sand, ignoring obvious warning signs or refusing to discover information, when RTB failed to pay Illinois use tax on its catalog sales. Since we find that RTB did not act with reckless disregard, and therefore did not knowingly conceal or knowingly avoid an obligation to pay money to the State, there is no violation under the False Claims Act.[2] See 740 ILCS 175/3(a)(1)(G) (West 2014). The trial court erred in finding liability against RTB on its catalog sales, and we reverse the trial court's determination and its award of damages. Accordingly, we also reverse the trial court's award of attorney fees and costs to relator.

¶ 31    In the cross-appeal, relator argues that the trial court erred in limiting its finding of liability against RTB to catalog sales, because a use tax would be required for Internet sales through the franchise provision of the Use Tax Act (35 ILCS 105/2 (West 2014)). Relator argues that RTB recklessly relied on its belief that the provision was unconstitutional in failing to investigate whether it had a tax obligation under the franchise provision, and that the trial court "effectively held the provision unconstitutional" when it found that a mere franchisor/franchisee relationship is insufficient to show a substantial nexus. Relator contends that error occurred because the franchise provision is constitutional.

¶ 32    We note that relator provides scant analysis on the franchise provision and does not provide a citation to the statute until its reply brief in response to RTB's brief on cross-appeal, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Jan. 1, 2016) (brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. *** Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on [a] petition for rehearing."). Furthermore, regardless of whether the language of the Use Tax Act would allow for collection of a use tax, under the

---

[2]We make no determination as to whether RTB actually had a duty to collect Illinois use tax on Internet or catalog sales.

commerce clause, that tax can only be "applied to an activity with a substantial nexus with the taxing state." *Brown's Furniture*, 171 Ill. 2d at 421. For all the reasons discussed in this opinion, RTB did not act with reckless disregard as to whether there was a substantial nexus between Illinois and its Internet sales.

¶ 33     Relator also argues on cross-appeal that the trial court erred in failing to find a substantial nexus as to RTB's Internet sales, in light of *National Geographic Society v. California Board of Equalization*, 430 U.S. 551 (1977). *National Geographic* is distinguishable from RTB's case where the defendant in *National Geographic* maintained two offices in the taxing state and the employees in those offices solicited advertising copy amounting to $1 million annually. *Id.* at 556. For the time period at issue, although RTB's franchises sent out catalogs to customers, RTB had no employees or offices in Illinois.

¶ 34     In addition, *National Geographic* was a case that challenged the constitutionality of California's use tax, not whether the defendant's failure to pay the use tax constituted a false claim. Since relator brought its claim under the False Claims Act, the relevant inquiry is whether RTB possessed the requisite knowledge to find liability under the Act. Although inquiry into whether a substantial nexus exists is helpful in making this determination, a finding of substantial nexus is not conclusive because a violation of the False Claims Act does not necessarily occur every time a substantial nexus is found and the defendant did not collect the tax. If the defendant conducts a good-faith investigation into its tax obligations, and its failure to collect the tax resulted from an honest misinterpretation of unsettled law or simple negligence, there is no liability under the False Claims Act. See *Ritz Camera*, 377 Ill. App. 3d at 997-98; *National Business Furniture*, 2016 IL App (1st) 150526, ¶ 33. As we have discussed, that is the situation before us on appeal. Accordingly, we affirm the trial court's finding of no liability under the False Claims Act regarding RTB's Internet sales.

¶ 35     Affirmed in part and reversed in part.