2023 IL App (1st) 220195

No. 1-22-0195

Order filed June 30, 2023

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE *ex rel.* STEPHEN B. DIAMOND, P.C., | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellant, | ) | |
| | ) | No. 2018 L 10136 |
| v. | ) | |
| | ) | The Honorable |
| HENRY POOLE & CO., LTD., | ) | Daniel J. Kubasiak, |
| | ) | Judge, Presiding. |
| Defendant-Appellee. | ) | |

_____

JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Justices Oden Johnson and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff Stephen B. Diamond, P.C. (Relator), on behalf of the State of Illinois, brought a *qui tam* action under the Illinois False Claims Act (740 ILCS 175/1 *et seq.* (West 2018)) against defendant Henry Poole & Co., Ltd. (Poole), alleging Poole knowingly failed to collect and remit taxes under the Retailers' Occupation Tax Act (35 ILCS 120/1 *et seq.* (West 2018)) and the Use Tax Act (35 ILCS 105/1 *et seq.* (West 2018)). Poole filed a motion for summary judgment. The circuit court found an issue of material fact existed on the issue of whether Poole had the requisite knowledge under section 3 of the Illinois False Claims Act (740 ILCS 175/3 (West 2018)) and

denied summary judgment. Poole filed a motion to reconsider. The court granted the motion to reconsider and ordered summary judgment in favor of Poole, finding that Relator failed to show Poole acted with reckless disregard, one of the three mental states of knowledge, and failed to show Poole submitted a false record or statement to the State, as required to establish a violation under section 3 of the Illinois False Claims Act. On appeal, Relator argues that (1) the circuit court erred by applying the wrong standard for "reckless disregard" under the Illinois False Claims Act because (a) the court erroneously held Diamond sought to impose a negligence standard, and (b) the court precluded discovery on nexus between Poole and the State of Illinois but relied on nexus as a basis for its grant of the motion to reconsider, and (2) the circuit court wrongly relied on the Illinois False Claims Act's false record and statement requirement, which the legislature eliminated in 2010. For the following reasons, we affirm the circuit court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3     On June 5, 2017, Charles Diamond, Relator's son, met with a representative of Poole, a family-owned tailoring shop located in the United Kingdom (UK), at a hotel in Chicago. During the meeting, the Poole representative took Charles's measurements and discussed shirt options with Charles. When Poole returned to the UK, Poole confirmed the shirt order and transmitted an invoice to Charles. Poole processed the payment for the shirts in its UK shop and charged Charles's credit card in British Pounds Sterling. At Charles's request, Poole shipped the shirts to Charles at a Chicago address.

¶ 4     On September 18, 2018, Relator filed a complaint against Poole to recover damages and civil penalties, pursuant to the Illinois False Claims Act (740 ILCS 175/1 *et seq.* (West 2018)). In the complaint, Relator alleged that Poole sells special order clothing in Illinois. During its visits to

Chicago, Poole's representative meets with customers at a hotel to show them fabric samples, take their measurements, contract for clothing, and accept credit card payment. All sales are completed in Illinois. Poole then manufactures the clothing in the UK and ships the clothing to customers. Poole makes sales through its website, where customers can order clothing using their measurements obtained in Illinois. Customers can also purchase clothing using measurements obtained in Illinois by e-mail and telephone. Relator asserted that Poole knowingly failed to collect and remit taxes in accordance with the Retailers' Occupation Tax Act (35 ILCS 120/1 *et seq.* (West 2018)) and the Use Tax Act (35 ILCS 105/1 *et seq.* (West 2018)) on its merchandise sold in Illinois and on its Internet and telephone sales to Illinois customers, in violation of the Illinois False Claims Act.

¶ 5     Poole filed a combined motion to dismiss pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619, 2-619.1 (West 2018)). The circuit court dismissed the allegations regarding the Retailers' Occupation Tax Act and allowed Relator to proceed on the allegations regarding the Use Tax Act. Both parties filed motions to reconsider, and the court denied the motions. In its written order, the court found, "questions of fact still remain as to whether Poole acted with *scienter* regarding whether Poole had knowledge of the UTA that cannot be determined at this stage in the proceeding." The court entered a case management order that Poole "shall respond to Relator's discovery with information reasonably appropriate to address the court's order on the parties' motions to reconsider on *scienter*."

¶ 6     On April 4, 2021, Poole filed a motion for summary judgment. In the motion and supporting documents, Poole stated it visits Chicago twice annually to conduct clothes fittings and show sample fabrics and garments to its customers. During each visit, Poole spends two days in

Chicago and meets with customers at a hotel. Poole has no place of business and does not have any agents or affiliates working in Illinois. After the visit, Poole returns to London and determines whether a customer's fabric is available. If the fabric is available, Poole sends a proposal to the customer with the purchase price in British Pounds Sterling. Once a proposal is accepted, Poole processes the customer's credit card in the UK shop and does all the work, including construction, adjustments, and altercations, in the UK. The customer can retrieve the order by picking it up at the UK shop or having it shipped to the customer. Poole never sells or delivers garments to customers during its Chicago visits. Poole alleged that it was entitle to summary judgment because Relator (1) "cannot establish Poole possessed the fraudulent intent necessary for liability under the Illinois False Claims Act" and (2) "has not and cannot establish that Poole made any misrepresentations to or filed any false or fraudulent records with the Illinois Department of Revenue in order to establish False Claims Act liability in connection with its sole remaining claim predicated on a violation of the UTA."

¶ 7      Relator filed a response to the motion for summary judgment contending Poole's argument of no fraudulent intent overlooks this court's interpretation of reckless disregard in *People ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 2017 IL App (1st) 152668, ¶ 42. Relator claimed this court in *My Pillow* defined reckless disregard as the "failure to make such inquiry as should be reasonable and prudent to conduct under the circumstances, a limited duty to inquire as opposed to a burdensome obligation." Relator asserted, based on this definition, that Poole's failure to investigate its tax obligation under the Use Tax Act showed Poole acted with reckless disregard in violation of the Illinois False Claims Act. Relator also argued that invoices showing Poole failed to collect use taxes evince a false statement under the Illinois False Claims Act.

¶ 8    Poole filed a reply arguing Diamond misconstrued the holding in *My Pillow* and the failure to investigate, alone, is not indicative of reckless disregard. Poole further claimed that, unlike *My Pillow*, it had no knowledge of the use tax and did not ignore any "obvious warning signs" that would trigger its duty to investigate. Poole also alleged that it did not file a false statement in violation of the Illinois False Claims Act because (1) the information contained in the invoices were not false and (2) the invoices were not submitted to the State of Illinois.

¶ 9    The court denied the motion for summary judgment. In its written order, the court held that a genuine issue of material fact still existed as to Poole's reckless disregard to abide by its Illinois tax obligations, stating:

> "The court finds Relator's argument persuasive. This situation appears to be an "ostrich type situation" where Poole failed to make an inquiry that would alert him as to the use tax. As Relator argues, Poole, like *My Pillow*, did not review Illinois statutes or regulations, did not review case law, did not review the IDOR website or IDOR publications, and never sought advice from IDOR. *My Pillow*, 2017 IL App (1st) 152668, ¶ 53. Like *My Pillow*, Poole does not 'demonstrate that it had a good-faith dispute over its use-tax obligation one way or another.' *Id.* ¶ 62. As to this issue, Relator argues that Poole's conduct went beyond 'innocent mistakes and negligence,' and as such, satisfies the standard for reckless disregard under the Act."

¶ 10    Poole filed a motion to reconsider. In its written order, the circuit court stated it "erroneously applied a negligence standard to Relator's claim." The court explained that, pursuant to *People ex rel. Beeler, Schad & Diamond, P.C. v. Relax the Back Corp.*, 2016 IL App (1st) 151580, and *State ex rel. Schad, Diamond & Shedden, P.C. v. National Business Furniture, LLC*,

2016 IL App (1st) 150526, "a defendant must choose to disregard some known indicator that an obligation is owed—'obvious warning signs,' 'red flags,' or similar triggers." The court found "Relator did not identify any 'obvious warning sign' or red flag which Poole choose to ignore, and Relator has identified no affirmative action that Poole took to avoid paying Illinois use tax." The court also found "Relator has presented no other fact, record or documents to establish that Poole knowingly concealed its purported use tax obligation to the State of Illinois." The court granted the motion to reconsider and granted summary judgment in favor of Poole. This appeal follows.

¶ 11                                    II. JURISDICTION

¶ 12    On April 4, 2021, Poole filed a motion for summary judgment. The circuit court denied the motion, and Poole filed a motion to reconsider. On January 12, 2022, the Court granted the motion to reconsider and granted summary judgment in favor of Poole. Relator filed a notice of appeal on February 10, 2022. We have jurisdiction over this appeal pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 303 (eff. July 1, 2017).

¶ 13                                    III. ANALYSIS

¶ 14    On appeal, Relator raises two arguments: (1) the circuit court erred by applying the wrong standard for "reckless disregard" under the Illinois False Claims Act because (a) the court erroneously held Diamond sought to impose a negligence standard, and (b) the court precluded discovery on nexus between Poole and the State of Illinois but relied on nexus as a basis for its grant of the motion to reconsider and (2) the circuit court wrongly relied on the Illinois False Claims Act's false record and statement requirement, which the legislature eliminated in 2010.

¶ 15    The purpose of summary judgment is to determine whether a genuine issue of material fact exists. *Wolff v. Bethany North Suburban Group*, 2021 IL App (1st) 191858, ¶ 29. A motion for summary judgment should be granted only if the pleadings, depositions, and affidavits on file demonstrate that no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Id.* In determining whether a genuine issue as to any material fact exists, a reviewing court must view the evidence in light most favorable to the nonmoving party. *Id.* A genuine issue of material fact, precluding summary judgment, exists where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts. *Id.* We review the circuit court's decision to grant summary judgment *de novo*. *Id.* ¶ 30.

¶ 16             A. "Reckless Disregard" Under the Illinois False Claims Act

¶ 17    The Illinois False Claims Act allows the Attorney General or a private individual to bring a civil action on behalf of the State for false claims. See 740 ILCS 175/1 *et seq.* (West 2018); *My Pillow*, 2017 IL App (1st) 152668, ¶ 6. A party that perpetuates fraud against the State is liable for civil penalties and treble damages. 740 ILCS 175/3(a)(1) (West 2018). Claims may be brought on the State's behalf by the Attorney General or by a private person—referred to as a relator—in a *qui tam* action. *Id.* § 4(a)-(c). In a *qui tam* action, the State may choose to intervene or, as in this case, may instead let the relator proceed with the litigation. *Id.* § 4(b)(4). The relator is considered a party to the action and is entitled to a percentage of the proceeds or settlement if the suit is successful. *Id.* § 4(c)(1), (d).

¶ 18    Relevant here, the False Claims Act mandates

"any person who:

\* \* \*

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the State,

is liable to the State for a civil penalty." *Id.* § 3(a)(1)(G).

The Act defines "knowing" and "knowingly" as a person, with respect to information (1) having actual knowledge of the information, (2) acting in deliberate ignorance of the truth or falsity of the information, or (3) acting in reckless disregard of the truth or falsity of the information. *Id.* § 3(b)(1)(A). "[N]o proof of specific intent to defraud" is required. *Id.* § 3(b)(1)(B).

¶ 19                     1. Proper Application of the Reckless Disregard Standard

¶ 20     To begin, Relator claims that the circuit court erred by applying the wrong standard for reckless disregard when assessing whether Poole violated the Illinois False Claims Act. Relator argues that this court in *My Pillow* defined "reckless disregard" as the "failure to make such inquiry as would be reasonable and prudent under the circumstances, a limited duty to inquire as opposed to a burdensome obligation." Relator alleges Poole never performed its limited duty to inquire about its tax obligation.

¶ 21     Poole argues that Relator's misinterpretation of *My Pillow* imposes an improper negligence standard. Poole claims that this court, in *National Business Furniture* and *Relax the Back,* established that reckless disregard requires more than ordinary negligence and involves a defendant ignoring red flags and obvious warning signs that would trigger a limited duty to investigate. Poole asserts that Relator failed to provide any evidence that Poole ignored any red

flag or warning sign, and as such, its failure to investigate a potential tax obligation, alone, was not sufficient to establish a claim under the Illinois False Claims Act.

¶ 22    The Illinois False Claims Act closely mirrors the federal False Claims Act (31 U.S.C. §§3729-3733 (2018)). *My Pillow*, 2017 IL App (1st) 152668, ¶ 6. Thus, in construing the Illinois statute, Illinois courts have relied on federal courts' interpretation of the federal False Claims Act for guidance. *Id.* ¶ 7. A seminal Seventh Circuit case on this issue is *United States v. King-Vassel*, 728 F.3d 707 (7th Cir. 2013). There, relator filed a complaint against the defendant, alleging that the defendant received Medicaid funds from the government for medications not approved by the federal Food and Drug Administration in violation of the federal False Claims Act. *Id.* at 709-10. The defendant moved for summary judgment, arguing, *inter alia*, that it did not have the requisite knowledge under the federal False Claims Act of the alleged Medicaid fraud. *Id.* at 710. The district court granted summary judgment in favor of the defendant. *Id.* The Seventh Circuit determined that the district court improperly held that the relator could not establish that the defendant recklessly disregarded its submission of a fraudulent claim. *Id.* at 713. The court explained relator

> "need only show that [the defendant] had reason to know of facts that would lead a reasonable person to realize that she was causing the submission of a false claim (per Black's) *or* that [the defendant] failed to make a reasonable and prudent inquiry into that possibility (per the Senate report)." (Emphasis added.) *Id.*

¶ 23    In forming its decision, the *King-Vassel* court relied on Senate Report No. 99-345 (1986), which addresses Congress's adoption of "reckless disregard" to the federal False Claims Act in 1986. See *King-Vassel*, 728 F.3d at 712-13. The Senate Report explains:

"[T]he constructive knowledge definition attempts to reach what has become known as the 'ostrich' type situation where an individual has 'buried his head in the sand' and failed to make simple inquiries which would alert him that false claims are being submitted. While the Committee intends that at least some inquiry be made, the inquiry need only be 'reasonable and prudent under the circumstances,' which clearly recognizes a limited duty to inquire as opposed to a burdensome obligation. The phrase strikes a balance which was accurately described by the Department of Justice as 'designed to assure the skeptical both that mere negligence could not be punished by an overzealous agency and that artful defense counsel could not urge that the statute actually require some form of intent as an essential ingredient of proof.' " S. Rep. No. 99-345, at 21 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5286.

The court also relied on Black's Law Dictionary's definition that "a person acts with reckless disregard 'when the actor knows or has reason to know of facts that would lead a reasonable person to realize' that harm is the likely result of the relevant act." *King-Vassel*, 728 F.3d at 713 (quoting Black's Law Dictionary 540-41 (9th ed. 2009)).

¶ 24    The Seventh Circuit has applied the two criteria for establishing reckless disregard set forth in *King-Vassel* in subsequent cases. See *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 842 (7th Cir. 2018) (finding relator only had to allege that the defendants had reason to know of facts that would lead reasonable persons to realize that they were causing the submission of a false claim or the defendants failed to make a reasonable and prudent inquiry into that possibility); *Thulin v. Shopko Stores Operating Co.*, 771 F.3d 994, 1000-01 (7th Cir. 2014)

(analyzing reckless disregard as grossly negligent or with reason to know of facts that would lead a reasonable person to realize that it was submitting false claims).

¶ 25    Based on these Seventh Circuit cases, reckless disregard under the federal False Claims Act occurs in two instances. First, a defendant acts with reckless disregard when he fails to make an inquiry as would be reasonable and prudent under the circumstances. Some inquiry must be made; however, this is a "limited duty to inquire as opposed to a burdensome obligation." Second, a person acts with reckless disregard when the person has reason to know of facts that would lead a reasonable person to realize that they were causing the submission of a false claim.

¶ 26    Mimicking federal case law, Illinois courts have found that reckless disregard requires more than " '[i]nnocent mistakes or negligence.' " *National Business Furniture*, 2016 IL App (1st) 150526, ¶ 33 (quoting *King-Vassel*, 728 F.3d at 712). It refers to (1) the failure "to make such inquiry as would be reasonable and prudent to conduct under the circumstances," (2) "a limited duty to inquiry as opposed to a burdensome obligation," and (3) the condition that "[o]nly those who act in gross negligence of this duty will be found liable." (Internal quotation marks omitted.) *Id.* (quoting *United States ex rel. Williams v. Renal Care Group, Inc.*, 696 F.3d 518, 530 (6th Cir. 2012), quoting S. Rep. 99-345, at 20-21 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5285-86). Thus, reckless disregard has been described as "an extreme version of ordinary negligence [citation], an aggravated form of gross negligence [citation], gross negligence-plus [citation], and a state of mind lying on a continuum between gross negligence and intentional harm." (Internal quotation marks omitted.) *Id.* Reckless disregard is " 'the ostrich type situation where an individual has buried his head in the sand and failed to make simple inquires which would alert him that false claims are being submitted.' " *Id.* (quoting *United States ex rel. Ervin & Associates, Inc. v.*

*Hamilton Securities Group, Inc.*, 370 F. Supp. 2d 18, 41 (D.D.C. 2005)). "Thus, one acting in reckless disregard ignores 'obvious warning signs' and 'refus[es] to learn of information which [it], in the exercise of prudent judgment, should have discovered.' " *Relax the Back*, 2016 IL App (1st) 151580, ¶ 27 (quoting *Hamilton Securities Group, Inc.*, 370 F. Supp. 2d at 42).

¶ 27　This court reviewed whether a defendant acted with reckless disregard under the Illinois False Claims Act. In *National Business Furniture*, the defendant was a Wisconsin company that sold furniture by phone, catalog, and Internet and shipped its products to customers. 2016 IL App (1st) 150526, ¶ 7. The relator alleged that the defendant knowingly failed to collect and remit use tax on its shipping charges, in violation of the Illinois False Claims Act. *Id.* ¶ 11. At trial, the evidence revealed that the defendant interpreted Illinois's administrative rule as not requiring any tax imposition on its shipping charges. *Id.* ¶¶ 13-14. The defendant subscribed to a tax publication and used software that tracked changes in the sales tax rules by state. *Id.* ¶¶ 15-16. Also, the Illinois Department of Revenue (IDOR) conducted a tax audit, and defendant showed its books to IDOR, including all the sales transactions where the defendant was not collecting taxes on shipping. *Id.* ¶¶ 18, 21. The circuit court held the defendant did not act with reckless disregard when it relied on the tax auditor's conclusion that defendant followed Illinois law and its interpretation of the administrative rule. *Id.* ¶ 23. On appeal, this court held that the circuit court's decision was not against the manifest weight of the evidence. This court noted that, although the defendant failed to periodically review the company's policies despite no tracked changes in state tax laws, it did not act with reckless disregard because "more than an error, mistake, or ordinary negligence is required, however, to demonstrate reckless disregard." *Id.* ¶ 39.

¶ 28     In *Relax the Back*, the defendant was a California business that sold back and neck care products by Internet and catalog sales to customers in Illinois. *Relax the Back*, 2016 IL App (1st) 151580, ¶ 6. The relator alleged the defendant knowingly failed to collect and remit use tax for catalog and Internet sales for its products in violation of the Illinois False Claims Act. *Id.* ¶ 7. The trial evidence showed that the defendant consulted with legal and tax professionals and was audited annually with no indication by the auditors that it had a tax obligation. *Id.* ¶ 21. Regarding the defendant's catalog sales, the circuit court found that the defendant recklessly disregarded its tax obligation because "it did not investigate whether its tax liability changed after [the defendant] required franchises to send catalogs to customers each year." *Id.* ¶ 25. This court reversed the circuit court's decision determining that the defendant's failure did not constitute reckless disregard. *Id.* ¶ 29. This court explained, "Although [the defendant's chief financial officer] did not actively seek the opinion of the IDOR or reevaluate [the defendant's] use tax obligation in light of its catalog requirement, this failure to ensure that [the defendant] had no duty to collect Illinois use tax is not evidence of reckless disregard," where reckless disregard "does not apply to acts resulting from innocent mistake or negligence." *Id.* ¶ 30. This court reasoned that, even after the defendant implemented the catalog requirement, it was audited annually and there was no indication that it should be collecting a use tax. *Id.* ¶ 29.

¶ 29     The court in *My Pillow* also reviewed whether a defendant knowingly failed to collect and remit use tax for Internet and telephone sales in violation of the Illinois False Claims Act. 2017 IL App (1st) 152668, ¶ 35. The circuit court found defendant did not conduct a reasonable and prudent inquiry into its tax obligations, such as to review statutes and regulations, the IDOR website, publications, case law, or information from IDOR. *Id.* ¶ 53. The circuit court found no inquiry was

done " 'even though My Pillow was participating at craft shows in Illinois and was selling products over the Internet and through phone sales to Illinois customers.' " *Id.* ¶ 54. The defendant also "paid its marketing company approximately $200,000 to nationally advertise its products." *Id.* The court also noted " '[e]ven though the ST-1s [(IDOR form)] clearly informed My Pillow that its Internet and telephone sales were taxable, My Pillow did no investigation and did not consult with any professional whether Internet and telephone sales were taxable.' " *Id.* ¶ 55. This court affirmed the circuit court's judgment, finding the decision was not against the manifest weight of the evidence. *Id.* ¶ 58.

¶ 30     Thus, in *National Business Furniture* and *Relax the Back*, this court held that the defendants did not act with reckless disregard, where they conducted a reasonable and prudent inquiry into their tax obligations under the particular circumstances. See *National Business Furniture*, 2016 IL App (1st) 150526; *Relax the Back*, 2016 IL App (1st) 151580. By contrast, in *My Pillow*, this court held that the defendant acted with reckless disregard where it conducted no inquiry into its tax obligation, despite signs of a potential tax obligation. See *My Pillow*, 2017 IL App (1st) 152668.

¶ 31     Unlike the defendants in *National Business Furniture* and *Relax the Back*, Poole concedes that it "conducted no investigation" into a potential use tax obligation. However, Poole claims that there is no evidence that IDOR "would even consider a foreign retailer's transient visits—for Poole, roughly 14 hours per year—enough to trigger a use tax collection obligation." According to federal and Illinois case law, the Illinois False Claims Act requires a limited duty to conduct an inquiry as would be reasonable and prudent under the circumstances. *King-Vassel*, 728 F.3d at 712-13; *National Business Furniture*, 2016 IL App (1st) 150526, ¶ 33; *My Pillow*, 2017 IL App

(1st) 152668, ¶ 42. While evidence of Poole's potential tax obligation may not be as extensive as the evidence in *My Pillow*, or even nonexistent, we find Poole's failure to conduct any type of inquiry still falls under "the ostrich type situation where an individual has buried his head in the sand and failed to make simple inquires which would alert him that false claims are being submitted." (Internal quotation marks omitted.) *National Business Furniture*, 2016 IL App (1st) 150526, ¶ 33.

¶ 32    We note the United State Supreme Court's recent decision in *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. ___, 143 S. Ct. 1391 (2023). There, the Supreme Court reviewed whether a petitioner may establish that a respondent had the requisite knowledge under the federal False Claims Act by proving a respondent had a subjective belief that their claims were not accurate. *Id.* at ___, 143 S. Ct. at 1395-96. The Court answered in the affirmative, finding that knowledge is established when, *inter alia*, the respondent has actual knowledge of a false claim, awareness of a substantial risk that information is false, or awareness of such a substantial and unjustifiable risk but submitted the claims anyway. *Id.* at ___, 143 S. Ct. at 1400-01. The Court acknowledged that courts have applied an objective form of reckless disregard, where one acts "in the face of an unjustifiably high risk of illegality that was so obvious that it should have been known, even if the defendant was not actually conscious of that risk." *Id.* at ___, 143 S. Ct. at 1401 n.5. However, the Court declined to address whether the objective form of reckless disregard applies to the federal False Claims Act because proof of a respondent's subjective awareness satisfied the knowledge requirement. *Id.* at ___, 143 S. Ct. at 1404. Because the Supreme Court found that subjective awareness was sufficient, not necessary, to prove knowledge under the federal False Claims Act, we find its decision in *Schutte* does not affect our analysis.

¶ 33                              2. Evidence of Significant Nexus

¶ 34    Next, Relator argues that the circuit court erroneously held there was no constitutionally significant nexus between Poole and the State of Illinois—and thus no obligation to pay the use tax—because the court (1) previously held that Diamond sufficiently pled Poole had substantial nexus with Illinois when it denied Poole's combined motion to dismiss and (2) discovery was limited to the issue of whether Poole acted with *scienter*, *i.e.*, the requisite knowledge under the False Claims Act.

¶ 35    We find Diamond's argument unpersuasive for two reasons. First, the circuit court, in ruling on the motion for summary judgment, was not bound by its findings on the motion to dismiss. This court acknowledged a "clear distinction" between a motion to dismiss and a motion for summary judgment:

> "A motion to dismiss under section 2-615 attacks only the legal sufficiency of the complaint. *** A significant difference between section 2-615 motions, as compared to *** motions for summary judgment is that a section 2-615 motion is based on the pleadings rather than on the underlying facts. Accordingly, affidavits [citation], the products of discovery [citation], documentary evidence not incorporated into the pleadings as exhibits [citation], testimonial evidence [citation], or other evidentiary materials [citation] may not be considered by the court in ruling on a section 2-615 motion. [Citation.] A basic premise of section 2-615 motion is that it accepts, for purposes of the motion, that all well-pled facts in the complaint are true." *Barber-Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1068-69 (1992).

See *Doe v. University of Chicago Medical Center*, 2015 IL App (1st) 133735, ¶ 43 (applying a similar rationale to section 2-619 motions to dismiss).

¶ 36    Hence, a court may find the pleadings sufficient to surpass a motion to dismiss but, after review of affidavits and supporting documentation, may later find the facts supporting the cause of action insufficient to surpass summary judgment. Furthermore, the parties ask us to review the court's grant of the motion for summary judgment, which we review *de novo*. Under *de novo* review, the appellate court performs the same analysis the circuit court would perform with no deference shown to the circuit court's judgment. *Beauchamp v. Dart*, 2022 IL App (1st) 210091, ¶ 8. Thus, the circuit court's findings have no bearing on our decision.

¶ 37    Second, nexus is a factor in the issue of *scienter*. *Relax the Back* and *My Pillow* discussed the defendants' nexus to Illinois in reviewing whether the defendants acted with reckless disregard. *Relax the Back*, 2016 IL App (1st) 151580, ¶¶ 22-24; *My Pillow*, 2017 IL App (1st) 152668, ¶¶ 36-40. Specifically, in *My Pillow*, this court considered nexus as a basis for finding the defendant recklessly disregarded its tax obligation. *My Pillow*, 2017 IL App (1st) 152668, ¶¶ 36-41. Therefore, Diamond had an opportunity to seek and submit discovery on Poole's nexus to Illinois to support a finding of *scienter*. As such, we reject Diamond's claim.

¶ 38    B. False Record and Statement Requirement Under the Illinois Fraud Claims Act

¶ 39    Lastly, Diamond claims the court wrongly relied on the false record or statement requirement in granting the motion to reconsider. Diamond argues the legislature eliminated the requirement when it amended section 3(a)(1)(G) of the Illinois False Claims Act by adding an alternative liability for any person who "knowingly conceals or knowingly and improperly avoids or deceases an obligation to pay or transmit money or property to the State." Poole argues that the

amendment did not eliminate the false record or statement requirement. Rather, the amendment broadens the language of section 3(a)(1)(G) by including knowing omissions to the false record and statement requirement.

¶ 40     This issue presents a question of statutory interpretation. In construing a statute, the goal of the court is to ascertain and effectuate the intent of the legislature in enacting the provision. *Cassidy v. China Vitamins, LLC*, 2018 IL 122873, ¶ 17. The statutory language, given its plain and ordinary meaning, is generally the most reliable indicator of that legislative intent. *Id.* Where the meaning of the statute is unclear from a reading of its language, courts may look beyond the statutory language and consider the purpose of the law, the evils it was intended to remedy, and the legislative history of the statute. *Id.* at 175-76. The issue of statutory construction is a question of law, and our review is *de novo*. *Id.* at 176.

¶ 41     Prior to the 2010 amendment, section 3 held a person liable to the State for a civil penalty if he "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State." 740 ILCS 175/3(a)(7) (West 2008). Effective July 27, 2010, the legislature amended section 3(a)(1)(G) to provide a person is liable to the State for a civil penalty if he

> "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the State." 740 ILCS 175/3(a)(1)(G) (West 2018).

¶ 42     Looking at the plain language of section 3(a)(1)(G), the statute provides two theories of liability: (1) knowingly making, using, or causing to be made or used a false record or statement

material to an obligation to pay or transmit money or property to the State or (2) knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the State. *Id.* The legislature's removal of "statement to conceal, avoid or decrease" from the subsequent amendment evinces the legislature's intent to create an alternative theory separate from the false record or statement requirement. See 740 ILCS 175/3(a)(7) (West 2008); *In re Detention of Lieberman*, 201 Ill. 2d 300, 320-21 (2002) (an amendment to a statute may be an appropriate source for discerning legislative intent).

¶ 43    In construing the knowingly avoid, conceal, or decrease provision, Relator argues that the act of avoiding or concealing an obligation to the State under section 3(a)(1)(G) equates to the act of failing to meet an obligation to the State. Because section 3 does not define "avoid" and "conceal," we rely on the dictionary for guidance. *People v. Chapman*, 2012 IL 111896, ¶ 24 (when a statute contains a term that is not specifically defined, it is entirely appropriate to look to the dictionary to ascertain the plain and ordinary meaning of the term). Relevant to the provision's context, Merriam-Webster Online Dictionary defines "fail" as "to miss performing an expected service or function for" or "to leave undone." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/fail (last visited June 22, 2023) [https://perma.cc/PB5L-YQT9]. "Avoid" is defined as "to keep away from," "to prevent the occurrence or effectiveness of," and "to refrain from." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/avoid (last visited June 22, 2023) [https://perma.cc/SS6W-J4L2]. The online dictionary provides that the word "avoid" "stresses forethought and caution in keeping clear of danger or difficulty." *Id.* "Conceal" is defined as "to prevent disclosure or recognition of." Merriam-Webster Online Dictionary, https://www.merriam-

webster.com/dictionary/conceal (last visited June 22, 2023) [https://perma.cc/4W3V-PRJ9]. The online dictionary provides the word "conceal" "usually does imply intent and often specifically implies a refusal to divulge." *Id.*

¶ 44   These definitions reveal that the words "avoid" and "conceal" denote an intent to commit a violation, whereas the word "fail" lacks any connotation of intent. Therefore, in choosing to use the words "avoid" and "conceal," the legislature intended to cover only those persons who intentionally choose not to meet their tax obligation. Relator's broad interpretation would be contrary to the language of section 3(a)(1)(G). See *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 283 (2010) (a court construing the language of a statute will assume that the legislature did not intend to produce an absurd or unjust result and will avoid a construction leading to an absurd result, if possible).

¶ 45   The legislative history of the federal False Claims Act provides further guidance. See *My Pillow*, 2017 IL App (1st) 152668, ¶ 6 (the Illinois False Claims Act closely mirrors the federal False Claims Act originally enacted in 1863). Notably, Congress made the same amendment to section 3729(a)(7) of the federal False Claims Act, the provision equivalent to section 3(a)(1)(G), in 2009. Compare Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4(a), 123 Stat. 1621 (2009) (codified as amended in sections of Titles 18 and 31 of the United States Code), with Pub. Act 96-1304, § 10 (eff. July 27, 2010) (amending 740 ILCS 175/3). The Congressional record on June 3, 2009, states:

> "Currently, Section 3729(a)(7) of the False Claims Act imposes liability for 'reverse' False Claims Act violations when a person makes or uses false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property

to the Government. This liability provision is analogous to the liability established under current Section 3729(a)(2) for making false records or statements to get false or fraudulent claims paid or approved. The Act, however, currently contains no provision that expressly imposes liability on a person who wrongfully avoids a duty to return funds or property to the United States by remaining silent. The amendments address this issue by expressly imposing liability on anyone who 'knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the United States.' *This language is intended to make clear that a person who retains an overpayment, while avoiding a duty to disclose or return the overpayment that arises from a statute, regulation or contract, violates the False Claims Act.* Indeed, to address any potential confusion among the courts as to what is intended to be encompassed within the term 'obligation' as used in Section 3729(a)(7), the amendments define that term in new Section 3729(b)(3) as encompassing legal duties that arise from the retention of any overpayment.

A legal obligation to disclose or refund an overpayment can arise in various ways. Examples include but are not limited to: (i) Government contracts that incorporate a rule of the Federal Acquisition Regulations that requires disclosure of an overpayment, and (ii) criminal statutes that penalize a party's non-disclosure of an overpayment in order to fraudulently secure the overpayment. Importantly, the amendments do not impose liability in situations in which the law clearly permits the recipient of the overpayment to retain the overpayment without disclosure pending a reconciliation process." (Emphasis added.) 155 Cong. Rec. E1295-03 (daily ed. June 3, 2009) (statement of Rep. Berman).

¶ 46     Like Congress, the Illinois legislature added a definition for "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or *from the retention of any overpayment*." (Emphasis added.) Pub. Act 96-1304, § 10 (eff. July 27, 2010) (amending 740 ILCS 175/3). Thus, the intent of the provision at issue is to hold liable "a person who retains an overpayment, while avoiding a duty to disclose or return the overpayment that arises from a statute, regulation, or contract." 155 Cong. Rec. E1295-03 (daily ed. June 3, 2009).

¶ 47     Here, the record fails to show that Poole knowingly concealed, avoided, or decreased an overpayment it received from the State of Illinois. The record also fails to show that Poole made or used a false record or statement material to an obligation to pay or transmit money or property to the State. As such, we find the circuit court's grant of summary judgment in favor of Poole was proper, where, as a matter of law, Relator failed to show Poole was liable under section 3 of the False Claims Act (740 ILCS 175/3 (West 2018)).

¶ 48                                    VI. CONCLUSION

¶ 49     We find, as a matter of law, that Poole did not violate the Illinois False Claims Act in failing to collect and remit Illinois use tax on its merchandise sold in Illinois and on its Internet and telephone sales to Illinois customers. Therefore, we affirm the circuit court's grant of summary judgment in favor of Poole.

¶ 50     Affirmed.

*People ex rel. Stephen B. Diamond, P.C. v. Henry Poole & Co.*, **2023 IL App (1st) 220195**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2018-L-10136; the Hon. Daniel J. Kubasiak, Judge, presiding. |
| **Attorneys for Appellant:** | Matthew Burns and Tony Kim, of Kim & Burns LLP, and Stephen B. Diamond, of Stephen B. Diamond, P.C., both of Chicago, for appellant. |
| **Attorneys for Appellee:** | John J. Scharkey, Michael H. King, and William C. O'Hara, of Sweeney, Scharkey & Blanchard, LLC, of Chicago, for appellee. |